NORTON *against* STRONG.

THIS was an action of trover for a quantity of hay and corn-ears.

The cause was tried at *Haddam, July* term, 1813, before *Swift, Brainard* and *Baldwin,* Js. On the trial, it appeared, that the hay and corn in question had been raised by shares on the farm of *Noah Norton,* deceased, and put into his house and barn; that at the time of his death, which happened in *December* 1807, and for a long time previous, the plaintiff was and had been his conservator, duly appointed; and that at the death of *Noah,* the plaintiff was in possession of the hay and corn no otherwise than as such conservator. It also appeared, that the defendant was *Noah's* lawful executor, and had acted as such from the time of his death; and in that capacity he claimed right to the possession of the property, and had taken and inventoried the same. And the plaintiff, to prove that he was the owner of the property, offered in evidence an authenticated copy of his account with *Noah,* consisting of numerous items of debit for necessaries furnished and services rendered to *Noah* in his life-time, and for his funeral expenses, and of credit for the rents and produce of his land, stating a balance due to the plaintiff of 84 dollars 80 cents; which account was exhibited by the plaintiff to the county court on the 29th of *March* 1808, and by that court accepted and ordered to be lodged on file. It was admitted, that when the account was so exhibited and allowed, the defendant was not present, and had not been notified to be present. To the admission of this evidence the defendant objected, contending that at the death of *Noah,* the plaintiff's right, as conservator, to the custody of the property in question ceased, and that he could no longer detain it from the executor. The court decided, that the account was inadmissible; and directed the jury to find a verdict for the defendant. The jury having found accordingly, the plaintiff moved for a new trial; and the questions of law arising on such motion were reserved for the advice of all the Judges.

*Daggett* and *E. Huntington,* in support of the motion, contended, that the plaintiff's account, allowed by the county

The rights and duties of a conservator, and the jurisdiction of the county court, in relation to the ward's estate, cease upon his death.

Nor has the conservator a lien upon the estate of the ward for disbursements made in his life-time for his support, so as to entitle the former to retain possession against the executor of the latter.

*Hartford,*
June, 1814.

Norton
*v.*
Strong.

court, was admissible to shew that the plaintiff had either an absolute or a qualified property in the hay and corn; either of which is sufficient to sustain trover. The statute(a) commits to the conservator the management and controul of his ward's person and estate, and requires the conservator to provide for the support of the ward out of the ward's estate. In the discharge of this trust, however, it will often become necessary for the conservator to advance his own money. For such advancements he is entitled, upon general principles, and by the analogies of law, to a lien upon the property of the ward in his hands. The lien having once attached, it will continue, notwithstanding the death of the ward, until the conservator's account is settled, and his advancements reimbursed. The county court is the forum established by statute for settling the conservator's account. If the conservatorship continues until the death of the ward, the conservator's account must necessarily be settled after that event. As the superior court cannot settle the conservator's account, the only proper mode of informing them what advancements he has made is by an authenticated copy of the account as adjusted and allowed by the county court. And it is no objection to the admission of such evidence, that the executor was not cited in when the account was exhibited to the county court. There is no such process known in the law; nor is there any need of it. The conservator is the agent of the county court to execute the trust delegated to him. The county court call him to account at their pleasure. They are the curators of all persons under conservators, and will take care of their rights.

*Hosmer* and *Staples,* contra, insisted that the account offered in evidence was properly rejected.

It is part of the case that the plaintiff never had the ownership or actual possession of the property in question. His claim must rest solely on his relation to *Noah Norton.* It is an obvious and conclusive answer to this claim, that the relation ended with *Noah's* death. At that moment the office of conservator ceased; and the whole of the personal estate of the deceased vested in the executor, and he only was entitled to the possession of it. The rights and

(a) *Tit.* 88. *c.* 1. *s.* 4.

duties of a conservator under the laws of this state are like those of a committee of lunatic in *England*, who has no interest in the estate of the ward during his life, and whose guardianship ceases upon his death. *Cocks* v. *Darson, Hob.* 215. *Selw. N. P.* 727. 1 *Fonb. Eq.* 53, 4.

But it is said, that the plaintiff had a *lien* upon the property for advancements which he had made. It is not pretended that this claim is sanctioned by any statute, adjudged case, *dictum* or custom. Nor is there any necessity or reason for it; because the conservator is invested with the management and controul of the ward's estate for the purpose of providing for his support out of it; and he is never obliged to advance his own money. Besides, it was impossible, from the very nature of a lien, that he should have one in this case; for he had at no time actual possession, and if he ever had a constructive possession, it was at an end before the alleged conversion. Nor is he entitled to any priority. The statute gives him none; the common law certainly gives him none. And if he had a priority, *non sequitur* that he could withhold from the executor his testator's property. He must, in that case, exhibit his claim, like other creditors, and the court of probate would order payment in full. Besides, it does not appear but that this estate was solvent; and if so, there could be no priority among the claims of the creditors.

Further, in order to make this account admissible, the plaintiff must shew, that the county court had summary and conclusive jurisdiction, which was regularly exercised; and that the allowance of his account gave him an interest in the personal estate of the deceased paramount to the executor's. There is nothing in the statute, which sanctions either branch of this position. The conservator is, indeed, accountable to the county court for the due execution of his trust; but the plaintiff's case requires something more than this; he demands the interposition of the county court, and that in a summary way, to enforce a claim in his favour against the estate of the ward, after the relation is at an end. It is equally difficult to assign a reason why the county court should have jurisdiction of the plaintiff's claim, and why the court of probate should not have. In the next place, if the county court had jurisdiction, it was not regularly exercised, no notice having been given to the executor. The proceed-

ing was *ex parte ;* and the executor cannot be concluded by it. *Buchanan* v. *Rucker,* 1 *Campb.* 63. It may be added, that there was no trial, nor judgment, in the county court. The plaintiff exhibited an account, unsupported by any proof,— not even by his own oath ; and the court accepted it, and ordered it to be lodged on file. This acceptance did not affect the property, which was already in the hands of the executor. It did not establish or pass a title. A transcript of such account proves nothing in this case.

EDMOND, J. [After stating the case.] The testimony rejected must have been offered on the ground, that if admitted, it would conduce to prove one or both of two propositions, *viz.* either that by the exhibition of the account by the conservator, in which mention of the corn and hay is made, and the acceptance of it by the court, the hay and corn vested in the plaintiff as his property ; or, that it would conduce to shew that the plaintiff, in his capacity of conservator, had become a creditor to the estate of *Noah,* and as such, had a lien upon the property, and a right to the possession until his claim should be satisfied.

The admissibility of the testimony in support of the first proposition will depend on the answer which ought to be given to this question : Can a conservator, or county court, or both together, *after the death* of an idiot, distracted or impotent person, do any act to change the state of the property of such idiot, &c. from what it was at the time of his death, so as to constitute the conservator the owner ?—In other words, could the county court and conservator, after the death of *Noah,* by any act of theirs, vest the corn and hay in question in the plaintiff?

And the admissibility of the testimony, offered to prove the second proposition, *viz.* That the plaintiff was a creditor, and, as such, had a lien on the property, &c. may be decided by settling the question, Has a conservator, after the death of an idiot, &c. being a creditor, a lien on the estate of the deceased, and a right to retain the possession until his claim is satisfied?

To answer the first question, if we bring into view at the same time the 4th and 5th sections of the act for relieving and ordering idiots, &c. (*tit.* 88. *c.* 1.) which contain all

that relates to the power of a conservator, and the 22d section of the act for the settlement of testate and intestate estates (*tit.* 60. *c.* 1.)(*a*) a bare inspection of them, will at once shew, that the authority given to the court of probate to order the sale of the real estate of a deceased person, where the personal estate is insufficient for the payment of debts, and the authority given to the county court and conservator where the debts exceed the personal estate, to order the sale of real estate, are nearly similar. That they are paramount authorities will not be questioned. It will appear equally obvious, that the powers given in each cannot be exercised by the court of probate and executor on one hand, and the county court on the other, in relation to the same estate at the same time.

It follows, if you suffer the county court and conservator, or either of them, to interfere in any respect with the estate of the idiot, &c. after his decease, for a moment, there is no limitation in point of time of their powers. You subject the estate to the incompatible claims of conservator and executor; and introduce the insupportable mischief of conflicting jurisdictions. This may be sufficient to shew the absurdity of permitting the county court to extend its jurisdiction over the estate beyond the period of the idiot's life. We are not to admit the idea in the construction of statutes, that the legislature intended to establish two distinct jurisdictions, with powers in relation to the same subject utterly irreconcilable. Viewing the statutes referred to, with an eye to the objects for which they were enacted, and nothing to my mind can be plainer, than that necessary provision for the idiot, &c. *during his life or disability,* is the sole object of the one, and a just settlement of his and all other estates *after death,* the great object of the other. An idiot, distracted or impotent person with an estate is essential to the application of the former. Until these are found existing at the same time, there is

*Hartford,*
June, 1814.

Norton
*v.*
Strong.

(*a*) The section here referred to is as follows : " That when the debts and charges allowed by the court of probate in the settlement of any intestate estate (or of any testate estate, where sufficient provision is not made by the will of the testator) shall exceed the personal estate, it shall be lawful for the judges of such courts respectively to order the sale of so much of the real estate as shall be sufficient to pay the same, with the incident charges of sale, in such manner as shall appear to them to be most for the benefit of such estates, which sales shall be good and sufficient in the law."

nothing to which the act can apply. When the idiot is provided for *for life*, the act has accomplished its object ; there is no further occasion for a conservator or court to provide for his person, or to stand between his estate and strangers ; it passes to other hands, and the law provides new representatives. Draw the line of jurisdiction, then, as it ought to be drawn, and as the framers of the law manifestly intended to draw it, and every difficulty, real or imaginary, must vanish. When death renders the cares of the county court and conservator no longer necessary, they may retire from their labours ; let the court of probate and executor succeed ; and, if the conservator has been faithful to his trust, the law will secure to him a just recompence for his services. As respects the first question, therefore, I am well satisfied that neither the conservator nor county court, nor both together, could do any act *after the death of Noah* to vest the title to the corn and hay in the plaintiff; that the plaintiff's account could furnish no evidence of ownership ; and to that point was inadmissible.

To the second question, whether a conservator after the death of an idiot, &c. being a creditor, has a lien on the estate of the deceased, and a right to retain the possession until paid ? In examining this question, I look at the statute for the *powers*, *rights* and *duties*, of a *conservator*, together with his liabilities and exemptions, as he stands related by his appointment to the person and estate of the idiot, and see what his privileges are, without attempting to search for or draw inferences from analogous cases ; and indeed I know of none ; and I find they are contained in few words : " He is to take care of and oversee such idiots, distracted and impotent persons and their estate for their support," and be accountable for his management of this trust, when ordered by the county court. This is the whole commission. Now it is manifest at once from inspection, that the statute by any *express words*, neither gives him a priority of claim, if he should have any claims, nor creates a lien on the estate he is to oversee other than what any creditor has on the estate of his debtor. And why he should have a lien I have not been able to discover. Is he bound, because he is conservator, to advance a single cent out of his own pocket, or to contract a single debt on his own credit ? Certainly not. Does he,

*Hartford,*
June, 1814.

Norton
*v.*
Strong.

by accepting the trust, subject himself to be sued, and made responsible for existing debts ? This, I think, will not be pretended. How then, should it be asked, is he to provide for the support of the idiot ? He may not be able instantly to dispose of personal estate ; there may be none, as the case may be ; the county court may not be in session, &c. The answer to my mind is obvious. He may do just what a servant might do for the idiot ; take up on his credit articles necessary to his support. An idiot, as well as an infant, is liable for necessaries ; or if the conservator has what the idiot stands in need of to spare, deliver them, and charge as other creditors do, till the estate, or some part of it, can be turned into money.

But it still may be objected, for his personal services at least he ought to have a lien ; otherwise, if the estate in the hands of an executor proves insufficient to pay all the debts, he may suffer loss by being subjected to an average. This too would be the case with all the creditors unpaid. But there is an answer much more satisfactory to my mind, and that is, the case put could never happen, unless from the gross negligence, or wilful fraud of the conservator himself. It is his duty to examine into the situation of the idiot's estate, and whenever he discovers that outstanding debts, including his own, exceed the personal estate, so that creditors cannot collect their dues without taking land, to save the cost of suits, to apply to the county court, and obtain an order of sale of so much of the land as may be necessary, together with the personal estate, to settle all the debts ; and when the whole estate is thus expended, if the idiot be still living, the further care of his person devolves on the select-men, at the expense of the town, or state. But if the conservator, after knowing (and he ought to know how it is,) that the debts outstanding amount to as much as the *whole estate*, should continue to disburse of his own property, and make charges to any amount, or to apply the personal estate on hand to the support of the idiot ; this, so far from entitling him to a preference in his claim, would be such a palpable fraud on the other creditors, that in point of strict justice (if that was obtainable) the whole deficiency of estate, thus occasioned, however and by whomsoever the estate is settled, ought to fall upon the conservator for a violation of his trust. This

being so, the danger of an average is the worst possible reason that could be urged in support of a lien in favour of a conservator. Add to this the admission of the principle, that a conservator has a lien, is wholly unnecessary to the discharge of his duty. If a stranger intermeddles, he may bring suits. An infant may sue by his guardian, or an idiot by his next friend, or overseer; and either may be sued, notifying the parent, guardian, and overseer or master.

Further, adopt the doctrine of a lien upon the estate in favour of the conservator, and the estate is completely locked up against the claims of every other creditor, if the conservator so elect. From the moment of his appointment, he has only to make advances, or render services, and he becomes a privileged creditor, has a lien on the whole estate, and is entitled to the possession. The amount of his claim is known only to himself. No tender can be made with safety. If a creditor attaches, he is brought up in trover or trespass; if he levies an execution, he is equally exposed; if the debtor dies, neither executor nor administrator can intermeddle to settle the estate, until the conservator thinks proper to make out his claims, and have them liquidated and adjusted by the county court, and that without the privity of the executor or heir; and if he pleases, has carved out his portion to his own satisfaction.

From these several considerations, and others which might be urged, I am satisfied, that a conservator, from the circumstance of being a creditor to the estate, acquires no lien whatever upon the property to entitle him to the possession; that the admission of such a principle is not warranted by law; is unnecessary to a conservator, if he is faithful to his trust; might be injurious to other creditors; obstruct the regular administration of justice; and unreasonably delay the settlement of estates; and therefore, that the account offered to prove the plaintiff a creditor, &c. was properly rejected by the court.

In this opinion SWIFT, TRUMBULL, SMITH, BRAINARD and INGERSOLL, Js. severally concurred.

BALDWIN, J. The question presented by this case arises under the provisions of the " act for relieving and ordering

of idiots, impotent, distracted and idle persons."(a)   By that statute, if such persons have any estate, it is made the peculiar duty of the county court, to order and dispose thereof, for their support; or the court may appoint a conservator to take care of their *persons and estates,* who, by the express provisions of the act, shall be *accountable to said court* for their management.   The county court are further authorized, if upon liquidation of the accounts exhibited, they exceed the personal estate, to order the sale of real estate to pay them.

The statute gives to the county courts a power over such persons, and their estate, analogous to that of the court of probate over the estates of persons deceased, and over the persons and estates of infants.   Both the county courts and the courts of probate exercise their powers, by agents who are expressly by law accountable to the tribunal, by which they were respectively appointed.   The county court is, in this instance, by statute, the peculiar tribunal for the settlement of the conservator's accounts, as much so as the court of probate is the peculiar tribunal for the settlement of an administrator's or a guardian's account.   No other tribunal can make the proper allowances, and liquidate and adjust the accounts.

I am aware that our statute respecting guardians, authorizes a settlement either with the court of probate, or the ward when of age.   The statute in question has no such provision.   The county court then seem to be the only tribunal, that can adjust and settle the accounts ; and it appears to me, that the evidence of such settlement, is peculiarly proper when the claims of the conservator, respecting the execution of his trust, are controverted.

But it is claimed, that the evidence offered in this case is irrelevant, because a credit to himself, as conservator, is illegal, and will not give him title to the property.   I need not discuss the question, whether a credit by the conservator of this personal property, at the appraisal of the select-men, and with the approbation of the court, will transfer the title. A suitor need not have the absolute property of the thing in controversy, to enable him to maintain trover.   As conservator the plaintiff had the exclusive possession of this prop-

(a) *Tit.* 88. *c.* 1.

erty, during the life of *Noah Norton*. He had a right to alienate it, and dispose of it, for the support of his ward; and had, in my opinion, a lien upon it in his hands for his compensation for the care and management of the property; for all advancements on account of his ward; and particularly so, for the expense of gathering the corn, hay and other articles, which compose the items of his demand. The account offered clearly shews facts to establish the lien, if not the transfer of the property.

It was urged in argument, that a conservator can never be a creditor: That so long as he has means, he ought always to furnish himself with cash, and never advance his own. I admit he may do so; but prudent management would forbid the rigid application of such a principle. He ought not to sacrifice the crops in the field, rather than advance the expense of harvesting; nor suffer his ward to starve, while looking a market for his property. His management must be prudent, and such as the court that appointed him will sanction. The sale of real estate can only be made to discharge advancements. This implies that advancements may lawfully be made.

It is objected to the settlement that it was made *ex parte,* and after the death of *Noah Norton*, when the powers of the conservator had ceased. From the nature of such a trust, it must generally continue, during the life of the ward. The conservator, as the agent of the court, bound to render his account to them, must of course do it afterwards, and receive their orders respecting the property in his hands unexpended. This seems to me the regular course; and that the administrator has no right to the property till such settlement is made, and order obtained. It would be dangerous to say, that the conservator's power ceased the moment his ward died. The object of his appointment was to protect the property as well as the person. His trust as to the person has ended; but he is still bound to take care of the property, till legally discharged of his trust, by accounting with the court, and receiving their final order. For this purpose he must have right to the custody of the property, as well as a lien for all his legal dues as conservator or trustee.

The principle contended for, that he must give up the property, settle his claims with the administrator, and look

to him for a balance, is not expressly required by the statute, and appears to me so unreasonable, that I cannot believe it a sound construction. It would subject the conservator to great delay, and possibly, to an average loss by insolvency, on advancements made upon the deposit of property in his hands. He is not bound to submit his claim for services, or advances, to any other tribunal than the county court which appointed him. They alone have power to settle the trust, not as judges between litigating parties, but by virtue of the peculiar summary powers expressly given them by statute for that purpose. They are the guardians of the rights of the impotent subject, and of all concerned. A settlement between them and the conservator, is not then, in the usual meaning of that expression, *ex parte.* They are settling with their own agent, in the same manner as the court of probate does with his.

In this view of the subject, I am of opinion that the evidence offered ought to have been received; and because it was rejected, I advise a new trial.

REEVE, Ch. J. concurred in the opinion delivered by Judge *Baldwin.*

New trial not to be granted.