HENRY S. JOHNSON'S APPEAL FROM PROBATE.

Third Judicial District, New Haven, Jan. Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Under our statutes a Court of Probate, upon proper application, notice and hearing, may authorize conservators, as well as executors, administrators and trustees in insolvency, to settle and adjust disputed or doubtful claims; and may sanction in advance the proposed terms or conditions of settlement if it finds them reasonable and just.

After an estate, supposedly intestate, had been distributed, a will was found which made a different disposition of the property and under which it became the duty of the administrator *c. t. a.* to recover, if possible, from four of the five distributees the property which had been allotted to them. Three of the distributees were under conservators, and a considerable part of their shares had been necessarily expended in their support; another distributee living in a remote

Johnson's Appeal from Probate.

part of the United States had spent a large portion of the property
set to him; and some of the heirs at law threatened and intended
to contest the validity of the will, thus involving long, uncertain
and expensive litigation. Under these circumstances the adminis-
trator *c. t. a.*, the heirs at law and all the beneficiaries under the
will, except unborn children of *S*, agreed upon terms of settlement.
*Held* that the Court of Probate, and the Superior Court upon appeal,
had power to authorize the conservators, as well as the administra-
tor *c. t. a.*, to settle and adjust the controversy upon the terms
proposed; but that such authority, if granted, should be without
prejudice to the rights of unborn children of *S*.

Under our law concerning conservators, the custody of the ward and
the care and management of his estate is primarily intrusted to the
Court of Probate, and the conservator is, in many respects, but the
arm or agent of the court in the performance of the trust and duty
imposed upon it.

Argued January 24th—decided March 9th, 1899.

APPEAL from an order and decree of the Court of Probate
for the district of New Haven refusing to authorize an ad-
ministrator *c. t. a.* to make a proposed settlement and com-
promise of certain claims and demands held by him, taken
to the Superior Court in New Haven County and reserved
by that court, *Roraback, J.*, upon a finding of facts, for the
consideration and advice of this court. *Superior Court ad-
vised that it has the power to grant the application.*

Harold St. Clair Johnson died domiciled in New Haven on
or about June 6th, 1896, leaving an estate valued at about
$60,000. No will was found and in January, 1897, his prop-
erty was distributed in equal shares as intestate estate to his
five heirs at law: two brothers, Henry S. and Oscar E., and
three sisters Sarah, Josephine and Susan. In July, 1898, a
will of the decedent was discovered, the material portions of
which are printed in the footnote.*

* "The rest and residue of all my property I give, devise and bequeath
as follows, to wit: If my sister, Susan Stoddard Clark Johnson, should
remain unmarried, then I give, devise and bequeath all the rest and resi-
due of my property to her and her heirs forever. If, however, my said
sister, Susan Stoddard Clark Johnson, should marry, then I give and
bequeath to her the use and income of all said property during her life,
such income to be paid to her for her sole and separate use. Upon her
death, if she leave any child or children surviving her, then said prop-

This will was admitted to probate in November, 1898, and said Henry S. Johnson was appointed administrator with the will annexed. Upon investigation he became satisfied that an attempt by him to collect from the heirs at law the v̇ ̇e of the property which had been distributed to them would, even if ultimately successful, result in prolonged and expensive litigation and that it would be better for all parties concerned if an amicable adjustment of the differences could be effected. With this end in view negotiations were had, all parties in interest except the unborn children of Susan being represented, and the terms of a compromise acceptable to all were agreed upon. All of the sisters, Sarah, Josephine and Susan, were represented in the negotiations by their conservators. The administrator c. t. a. of said Harold St. Clair Johnson, brought an application to the Court of Probate setting forth the foregoing facts, among others, and praying that the court would authorize him and the others interested, all of whom were made respondents, to settle their differences upon the terms agreed upon, which were detailed at length in the application. Upon the denial of this application said Henry S. Johnson, in his individual capacity, appealed to the Superior Court. That court found that the compromise suggested was fair and reasonable, that the rights of such of the parties as were incapable were fully protected by the terms of settlement and that such settlement, if effected, would result in a substantial benefit to all the parties interested. The court, however, being uncertain as to its jurisdiction and power to accept and approve of said terms, with the consent of all parties to the record, reserved the questions of law arising thereon for the consideration and advice of this court.

Other facts material to the case are stated in the opinion.

---

erty shall be used for the support and education of such child or children, said property being equally divided between said children, share and share alike. But if my said sister, Susan Stoddard Clark Johnson, after such marriage shall leave no issue surviving her, then I give, devise and bequeath said property to my brother, Oscar Eugene Johnson, to him and his heirs forever."

*William B. Stoddard* and *A. Heaton Robertson*, for all parties.

The Court of Probate has power to grant the relief asked for. Pub. Acts of 1895, p. 485. This Act broadens and enlarges the powers of the Court of Probate in authorizing executors, administrators, etc., to settle and compromise claims. Gen. Stats. § 594; *Morris* v. *Grinnell*, 51 Conn. 481. Under § 478 of the Gen. Stats. a conservator has a perfect right to pay a debt or settle a claim against his ward. We have here an administrator with a claim against a conservator. The administrator threatens a suit unless the conservator pays over to him the amount of money that he claims to be due. Surely, under this statute, the conservator has a right to pay it all over, or a part of it, to settle this debt or claim against his ward. *Hutchins* v. *Johnson*, 12 Conn. 376; *Nettleton's Appeal*, 28 id. 272; *State* v. *Washburn*, 67 id. 187. But irrespective of the statute authorizing executors, administrators, etc., to settle and compound claims in favor of or against the estate they represent, they had this power under the common law, before the passage of the statute. *Allen* v. *Munson*, 2 Conn. 691; Smith's Probate Law (Mass.), 316; *Chadburn* v. *Chadburn*, 9 Allen, 173; *Clark* v. *Cordis*, 4 id. 466; *Moulton* v. *Holmes*, 57 Cal. 546; *Chouteau* v. *Suydam*, 21 N. Y. 179. The finding of facts says that the compromise is fair and just and for the benefit of all parties. That being so, we can see no reason why this court should hesitate to advise the Superior Court to approve of the compromise. Equity demands it, and the law seems to amply cover it.

TORRANCE, J. The record in this case sets forth a somewhat exceptional state of facts. Harold St. Clair Johnson died in June, 1896, leaving an estate of about $60,000. His heirs at law were two brothers, Henry and Oscar, and three sisters, Josephine, Sarah and Susan, all now living. No will of Harold's could be found when he died, and all concerned supposed he had left none. Thereupon an administrator was appointed upon Harold's estate, and it was settled as an intestate estate. Final distribution of the estate was made by order of the Court of Probate in January, 1897, and under it,

each of the above named brothers and sisters received a little over $11,000. Some eighteen months after this distribution was made, a paper purporting to be the last will of Harold was found. It was subsequently admitted to probate, and an administrator with the will annexed appointed. As the disposition of the estate by the will is very different from that made by the distribution, it became the duty of the administrator to recover, if possible, from each of the distributees except the sister Susan, the property which they had received under the distribution. Upon trying to do this, however, he found that the conservators of Sarah and Josephine had expended for their wards a large portion of the amount which had been distributed to the two sisters; that the wards had no estate other than that which remained of the amount distributed to them, and were and would probably remain incapable of self-support; that the brother Oscar lived in California and had expended a large portion of the property distributed to him, and was unable to respond to the claims of the administrator; that some of the heirs intended to take an appeal from the decree of the Court of Probate establishing the will, and to contest the right of the administrator to recover from the distributees at all; and in short that the attempt to enforce his claims would probably involve long, uncertain and expensive litigation, and would certainly result in great hardship to all the distributees except Susan. It happens that four of the distributees, namely, Susan, Sarah, Josephine and Oscar, are the sole beneficiaries under the will, with the exception of a nephew of the testator to whom the sum of $500 is given, and those described as children of Josephine and Susan, to whom certain interests are given contingently. All the beneficiaries under the will with the exception of those children, and all the heirs of the decedent, and the administrator, have agreed to the settlement and compromise set forth in the application, and are willing to make and execute the same, and they ask the Superior Court as an appellate court of probate to authorize and empower them to do so, and to do all things necessary to make it effectual and final.

One of the parties to this compromise settlement is an ad

ministrator, and three others, namely, the three sisters, are
under the care of conservators; the other parties are *sui juris ;*
and the general question reserved for the advice of this court
is in substance whether the Superior Court, as an appel-
late court of probate, has the power to authorize these repre-
sentatives of others to make such a compromise settlement.

So far as the administrator in this case is alone concerned,
we think the court has full power to authorize him to enter
into such an agreement. Under chapter 83 of the Public
Acts of 1895, courts of probate are empowered to "authorize
executors, administrators, and trustees in insolvency to com-
promise and settle any doubtful or disputed claims or actions
or any appeal from probate in favor of or against the estates
represented by them, respectively." The claims of the ad-
ministrator in the present case come clearly within the class
of claims covered by this statute, and the power to authorize
him to compromise and settle them is expressly given to the
Court of Probate, and, by clear implication, it is also given to
the Superior Court as an appellate court of probate in such
cases.

An executor or administrator, without any special author-
ization,. may settle and discharge any claims the estate may
have against others, and consequently he may compromise and
settle doubtful or disputed claims of that kind, or may submit
them to arbitration ; *Alling* v. *Munson*, 2 Conn. 691; 3 Red-
field on Wills, p. 236 ; *Boyd* v. *Oglesby*, 23 Gratt. 674 ; but
he does this subject always to the approval of the Court of
Probate in passing upon his final account, and, so to speak,
at his peril to a certain extent; while under the statute he,
in effect, gets this approval in advance of the act of settle-
ment and compromise, and this measure of protection the Su-
perior Court has the power to give him in the present case.

With respect to the powers of conservators to settle and
compromise claims, and the power of the Court of Probate
over them in relation to such settlements and compromises,
the case is somewhat different, as the aforesaid statute does
not expressly include them, and it may be doubtful whether

they can be brought within it by holding that they are within the equity of it.

The powers of conservators, and of courts of probate over them, are only such as are given by statute, expressly or by implication, and to the statutes conferring such powers we must look when a question arises as to the nature and extent of such powers. *Norton* v. *Strong*, 1 Conn. 65, 70; *State* v. *Washburn*, 67 id. 187, 195.

The first Act relating to conservators appears to have been passed in 1699, and the power to appoint them, and to call them to account, was given to the County Courts. Rev. Stat. 1808, p. 383. This power of appointment and control remained with the County Courts until 1841 and 1843, when it was transferred to the Court of Probate. Public Acts of 1841, Chap. 14; Public Acts of 1843, Chap. 17. The old statute of 1699 as it appears in the Revision of 1821, makes it the duty of the conservator to take care of and manage the estate of the ward in a husbandlike manner, without committing waste, and to apply the annual income and profits thereof for the support of the ward and his family, It empowered the conservator, among other things, " to collect all debts due to " the ward, " and to institute suits for that purpose; and to adjust and settle all accounts and debts due from " the ward, and to pay such debts, so far as he was able to do so out of the personal estate, and if not so able, the court could authorize him to sell real estate for such purpose. Revised Statutes, 1821, Title 49, § 2. Under the language of this statute we think it clear that conservators had power to settle and compromise doubtful and disputed claims. Under it this court held that a conservator had power to submit claims of his ward to arbitration, and this mainly on the ground that he had power to adjust and settle claims and institute suits. *Hutchins* v. *Johnson*, 12 Conn. 376. Indeed, speaking generally, it may be said that the power of the representatives of others to submit claims to arbitration wherever such power exists at all, flows from the prior right to adjust and settle claims and institute and defend suits, as appears from the reasoning of the court in the cases of *Hutchins* v. *Johnson, supra;*

*Griswold* v. *North Stonington*, 5 Conn. 367; *Union* v. *Crawford*, 19 id. 331; *Mallory* v. *Huntington*, 64 id. 88. If such representatives are held to have the lesser power to submit to arbitration, it is generally because they have the larger power to adjust, settle, and litigate. The phraseology of the statute of 1821 continued without substantial change to be the language of our statutes upon this subject down to the Revision of 1875. Rev. Statutes, 1849, p. 435, § 4; Rev. Statutes, 1866, p. 515, § 4.

In the Revision of 1875, the language of the section we have been considering was changed as follows: "The conservator shall manage all the estate of his ward, and apply the net income thereof, and, if necessary, any part of the personal estate, to support him and his family and to pay his debts, and may sue for and collect all debts due to him." Rev. Statutes, 1875, p. 347, § 4. This is substantially the language of our present statute. Rev. Statutes, 1888, § 478. We see nothing in this change of phraseology in 1875 that indicates an intent on the part of the legislature to change the law or limit the powers theretofore possessed by conservators; indeed, this court has held that their powers are enlarged by the present Act as compared with the former one. *Palmer* v. *Cheseboro*, 55 Conn. 114. Under the present Act the conservator has as against the ward, the sole care and management of the estate and the sole power over the claims in favor of or against the estate. He alone can collect, by suit or otherwise, debts due to the ward, and he alone can pay the debts due from the ward. As under the law the ward may be thus deprived of substantially all power over his estate, including the power to settle and compromise claims, it is only reasonable to hold that this power, an important and necessary one in the management of the estate, should reside in the person charged with that management; and we think that under the present statute, as under prior forms of it, this power to settle and compromise claims is, within certain limits, conferred upon the conservator. But the exercise of this power, as well as all the other dealings of the conservator with the estate of his ward, is under the super-

vision and control of the Court of Probate. Indeed, under our law the custody of the ward and the care and management of his estate is primarily intrusted to the Court of Probate, and the conservator is, in many respects, but the arm or agent of the court in the performance of the trust and duty imposed upon it. He is accountable to it for his care and management of the estate, and it may remove him upon its own motion and appoint another in his stead; his accounts are returnable to it, and are subject to its allowance and adjustment. If he exercises his statutory power to settle and compromise claims, he does this subject to its power to approve or disapprove of his action. This being so, we think the Court of Probate, upon proper application, notice and hearing, may authorize the conservator to settle and compromise any doubtful or disputed claims, because it has the power to approve of such settlement and compromise when done by him without such authorization.

Our conclusion, therefore, is that the Superior Court, as an appellate court of probate, has power to authorize the administrator and conservators in the case at bar to settle and compromise disputed claims.

It is found that the proposed compromise is a fair and reasonable one, that by it the rights of such of the parties as are incapable are fully protected, that it will avoid long and expensive litigation and will result in substantial benefit to all the parties interested. All the parties interested in the decedent's estate, either as heirs at law or under the will, except those described in the will as the children of the sisters Susan and Sarah, are before the court either personally or by their representatives in interest, or attorneys, and all these parties have agreed to the settlement and compromise set forth upon the record.

Those interested under the will and described therein as the children of the sister Sarah, are fully protected as to their interest under the will by the proposed compromise; but those described in the will as the children of the sister Susan, are not before the court, and their interests under the will are not protected by the compromise. Although there

is, upon the finding, but little probability that any such children will ever be born to Susan hereafter, we cannot say as matter of law upon the finding that the birth of such children is impossible. Under the will we think these children would, when born, take a substantial, contingent interest, and therefore any decree made in the case should be made without prejudice to the rights and interests of such children.

The Superior Court is advised that it has the power to grant the prayer of the application, but that if granted it should be done without prejudice to the rights of unborn children of the sister Susan.

In this opinion the other judges concurred.