STATE OF CONNECTICUT *v.* EDWARD F. TARCHA

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 12-15162

Argued July 13—decided September 24, 1964

*Edward Y. O'Connell,* of Stafford Springs, for the appellant (defendant).

*F. Joseph Paradiso,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J. From his conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a of the General

Statutes, the pertinent provisions of which are quoted in the footnote,[1] the defendant has appealed, assigning as the sole error the admission into evidence by the court of the results of a chemical test to determine the amount of alcohol in his blood. The defendant was apprehended by a state police officer whose attention was directed to him by his manner of operating his car. He was arrested on the scene for operating a motor vehicle while under the influence of intoxicating liquor; he was advised of his rights, and upon being asked whether he would consent to a test to determine alcohol in his blood he expressed his consent to a blood test. Such a test was made at a doctor's office. No evidence was offered by the state that the equipment used by the doctor had been tested within thirty days prior to

---

[1] "Sec. 14-227a. OPERATION WHILE INTOXICATED. CHEMICAL TESTS. (a) No person shall operate a motor vehicle upon a public highway of this state while under the influence of intoxicating liquor or any drug.

"(b) In any criminal prosecution for a violation of subsection (a) of this section, evidence respecting the amount of alcohol in the defendant's blood at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath or blood, shall be admissible and competent provided: (1) The defendant consented to the taking of the test upon which such analysis is made; . . . (3) the test was performed according to methods and with equipment approved by the state department of health and was performed by a person certified for such purpose by said department. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state; (4) the device used for such test was checked for accuracy by the state department of health within thirty days before the test and by the operator thereof immediately after the test . . . .

"(d) The commissioner of health shall ascertain the reliability of each method and type of device offered for chemical testing purposes of blood and of breath and certify those methods and types which he finds suitable for use in testing blood and in testing breath in this state. He shall adopt such regulations governing the conduct of chemical tests, the operation and use of chemical test devices and the training and certification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and to insure reasonable accuracy in testing results. . . ."

the test or immediately after the test. At the time, the defendant was under a Probate Court conservatorship of his person and estate and held a valid Connecticut operator's license.

The defendant bases his assignment of error on, first, the claim that, being under a Probate Court conservatorship of his person and estate, he lacked the legal capacity to give the consent required by the statute, and second, the claim that no evidence was offered by the state that the device used to extract the sample of blood from him had been tested as required by the statute.

At the outset, we note that the defendant's plea was not guilty, that it was not a plea of not guilty by reason of insanity. Thus, the question before us is whether the defendant was deprived of his capacity to consent by the conservatorship of his estate or person. Section 45-70 of the General Statutes provides that when a person is found to be incapable of managing his affairs a conservator of such person shall be appointed who shall have charge of his person and estate. The basic purpose is to make necessary provision for the incapable person during his life or disability; *Norton* v. *Strong,* 1 Conn. 65, 69; and therefore the conservator has the sole care and management of his estate and the incapable person is deprived of all power over it. *Johnson's Appeal,* 71 Conn. 590, 597. The statute is not limited to those persons who may be insane, but any incapacity, mental or physical, will justify the appointment of a conservator. 2 Locke & Kohn, Conn. Probate Practice § 652. The fact that a person is under a conservator does not necessarily imply that he may not be able to handle small sums of money and purchase his own necessaries; *Cleveland's Appeal,* 72 Conn. 340, 342; or that he is incapable of exercising the intent and doing the acts

necessary to establish a domicil. *Culver's Appeal,* 48 Conn. 165, 172. There can be no question that an incapable person may be guilty of committing a crime if he had sufficient reason, understanding and mind to enable him to judge of the nature and consequences of his act, that it was a criminal act and that its commission would expose him to penalties. *State* v. *Kenyon,* 134 Conn. 43, 46.

The consent required by § 14-227a must be a real consent. So it has been held in states having similar laws. *State* v. *Burger,* 74 N.J. Super. 208, 214; *State* v. *Ball,* 123 Vt. 26, 30. The defendant must freely and voluntarily consent under conditions where he was mentally and physically able to make a choice and with full knowledge that the results of the test might be used for or against him. *Ray* v. *State,* 233 Ind. 495, 498. If he is mentally capable of perceiving or understanding events and his surroundings, he is legally capable of consent. *Bowden* v. *State,* 95 Okla. Crim. 382; Slough & Wilson, "Alcohol and the Motorist: Practical and Legal Problems of Chemical Testing," 44 Minn. L. Rev. 673, 689. In the case before us, the only evidence as to the defendant's incapability was that a certificate of incompetency of the veterans' administration had been filed with the Probate Court for the district of Stafford and that a decree of that court appointing a conservator for him had been entered. Furthermore, the mere operation of an automobile, whether the operator be licensed or unlicensed, constituted consent to a chemical testing of his blood or breath under the implied consent provisions of § 14-227b.[2] As to similar statutes in New York and Virginia, see Weinstein, "Statute Compelling Submission to a Chemical Test for Intoxication," 45 J. Crim. L., C.

---

[2] "Sec. 14-227b. IMPLIED CONSENT TO TEST. Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of blood or breath. . . ."

& P.S. 541, 547; note, "Virginia's Implied Consent Statute: A Survey and Appraisal," 49 Va. L. Rev. 386. We conclude that the fact that the defendant was under a conservatorship did not in and of itself prevent the defendant from giving a valid consent.

In his second ground of error, the defendant argues that under the language of the statute the "test" is the withdrawal of the blood specimen from the accused's body and that what the state department of health does in the laboratory is the "analysis" mentioned in the statute. "Analysis" is defined, in chemistry, as "the determination of the nature or proportion of one or more constituents of a substance" and "test" is defined as "a standard or criterion by which the qualities of a thing are tried" and, in chemistry, "a trial or reaction for identifying a substance or ingredient." Webster, New World Dictionary of the American Language (Encyc. Ed.). The purpose of this statute is to make admissible in evidence the results of a chemical test of the breath or blood, surrounded by the safeguards specified in § 14-227a (b), including the requirement that the blood sample be taken by a licensed physician and that "the device used for such test . . . [be] checked for accuracy by the state department of health within thirty days before the test and by the operator thereof immediately after the test." § 14-227a (b) (4). While the statute refers to "taking" the test, the defendant is not "taking" a test, as a schoolboy takes a test of his knowledge, but the breath or blood of the defendant is tested chemically to determine its content of alcohol. A test of the blood requires that a sample of blood be extracted from the defendant. The extraction of the blood is not the testing of the blood, as is clearly indicated by the second sentence of subdivision (3) of § 14-227a (b): "If a blood test is taken, it [i.e. the blood test] shall be on a blood

sample taken by a person licensed to practice medicine and surgery in this state." The obvious purpose of having a licensed doctor take the blood sample is primarily for the protection of the health and safety of the defendant through the doctor's skill and know-how and also to ensure that the blood sample is a true sample. The legislature could not reasonably have intended that a doctor's syringe used to extract blood was such a device as required a check for accuracy. This is clearly demonstrated by the language of subdivision (d) of § 14-227a.

There is no error.

In this opinion DEARINGTON and LEVINE, Js., concurred.

