STATE OF CONNECTICUT *v.* GEORGE NOVOTASKY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 12-45084

Argued September 16—decided December 6, 1968

*Edward C. Wynne,* of Glastonbury, for the appellant (defendant).

*John N. Lombardo,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J.   After a trial to the jury, the defendant was found guilty of operating a motor vehicle on or about November 27, 1967, while under the influence of intoxicating liquor and from this judgment he has appealed, assigning error in the rulings of the court on certain evidence, which matters he has set forth in exhibits attached to his assignment of errors.

The issues relate to the court's ruling in admitting certain testimony of Dr. Herman A. Ellenberger, a state toxicologist of the department of health. General Statutes § 14-227a[1] provides in subsection (a) that "[n]o person shall operate a motor vehicle upon a public highway of this state . . . while under the influence of intoxicating liquor or any drug"; subsection (b) provides that "[i]n any criminal prosecution for a violation of subsection (a) of this section, evidence respecting the amount of alcohol in the defendant's blood at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath or blood, shall be admissible

[1] "Sec. 14-227a. OPERATION WHILE INTOXICATED. CHEMICAL TESTS. (a) No person shall operate a motor vehicle upon a public highway of this state or upon any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, while under the influence of intoxicating liquor or any drug, or both.   (b) In any criminal prosecution for a violation of subsection (a) of this section, evidence respecting the amount of alcohol in the defendant's blood at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath or blood, shall be admissible and competent provided:   (1) The defendant consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to the defendant within twenty-four hours after such result was known; (3) the test was performed according to methods and with equipment approved by the state department of health and was performed by a person certified for such purpose by said department.   If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery

and competent provided . . . ," and thereafter six conditions are set forth as conditions precedent to the admission of such evidence.

The defendant objected to the admission of Dr. Ellenberger's testimony as it related to the results of his analysis of the sample of the defendant's breath performed in the state's laboratory, claiming that one of the conditions precedent as set forth in subsection (b) (4) had not been met and thus the evidence was inadmissible. He argues that "device" as used in (b) (4) refers to the apparatus used in collecting the sample and that there was no evidence that such "device" had been checked for accuracy by the state department of health "within thirty days before the test and by the operator thereof immediately after the test," as required by this subsection. The state argues that "device" as used here refers to the apparatus used in analyzing the sample collected, and not the "device" used in collecting the sample. The trial court was in accord with the state's contention and admitted the testimony. The question raised here is whether "device"

in this state; (4) the device used for such test was checked for accuracy by the state department of health within thirty days before the test and by the operator thereof immediately after the test; (5) the defendant was afforded an opportunity to have an additional chemical test performed and the officer who arrested or charged the defendant immediately informed him of this right, afforded him a reasonable opportunity to exercise the same and made a notation to that effect upon the records of the police department, and (6) additional competent evidence is presented bearing on the question of whether or not the defendant was under the influence of intoxicating liquor. . . . (d) The commissioner of health shall ascertain the reliability of each method and type of device offered for chemical testing purposes of blood and of breath and certify those methods and types which he finds suitable for us in testing blood and in testing breath in this state. He shall adopt such regulations governing the conduct of chemical tests, the operation and use of chemical test devices and the training and certification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and to insure reasonable accuracy in testing results."

as used in subsection (b) (4) refers to that used in collecting the sample or that used in the analysis of the sample so collected.

The construction of a statute presents a question of law. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116. Since this is so, a general statement of our law relative to interpreting a legislative intent embodied in a statute will be helpful. A statute must be construed as a whole and so as to reconcile all parts as far as possible. *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 266. In ascertaining the intent of the legislature, the object of the legislation is to be considered. *Norwalk* v. *Daniele,* 143 Conn. 85, 87. Even if, as claimed, two constructions were possible, the "courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and possibly bizarre results. . . . A construction attributing to the legislature an intent to create a single, definite standard applicable to all cases is to be favored." *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331.

Section 14-227a (b) (4) commences with the words "the device used for such test"; thus we must examine the entire statute to ascertain the type of test that the phrase "such test" refers to. Subsection (d) requires the commissioner of health to "adopt such regulations governing the conduct of chemical tests, the operation and use of chemical test devices and the training and certification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and to insure reasonable accuracy in testing results." Thus the operator of such chemical testing device must be certified by the commissioner. We take judicial notice that only six operators have been certified by the commissioner to operate such

devices, of whom Dr. Ellenberger is one. 25 Conn. L.J., No. 43, p. 20 (April 21, 1964).

It is obvious that such operators do not participate in obtaining a sample of the breath or blood but only in the test of such sample after it is obtained, that is, in chemically analyzing such sample. It follows that the device used for "such test" is that which is under the control of such operator. Furthermore, subsection (b) (4) requires that the "device used for such test was checked for accuracy . . . by the operator thereof *immediately* after the test" (italics supplied). The adverb "immediately" is significant. The only device within the control of the operator which could immediately be checked for accuracy would be the device which the operator used in analyzing the sample. The construction insisted upon by the defendant would require the operator to travel at all times to each location in the state after a sample had been obtained and check the sampling apparatus for accuracy. It is apparent that such a checking could not be "immediately" accomplished as required by the statute. "An intent to enact an unworkable statute is not to be imputed to the General Assembly unless the statutory language expressly requires it." *Pecora* v. *Zoning Commission,* 145 Conn. 435, 440. Moreover, subsection (b) (2) requires that "a true copy of the report of the test result . . . [be] mailed to the defendant within twenty-four hours after such result was known." It is clear that the test result is that resulting from the "device" used in chemically analyzing the sample submitted to the operator. Such a construction tends to create a single definite standard applicable to all cases. *Muller* v. *Town Plan & Zoning Commission,* supra. The object of this section of the statute is to establish a standard by which samples of breath and blood of a defendant are analyzed for the purpose of determining

the amount of alcohol by weight in the defendant's blood. We are satisfied from the reading of the entire statute, in the light of its reasonable application to the purposes sought, that the "device" referred to in (b) (4) means the device used by the operator in performing the chemical test. Furthermore, such a construction of the statute is consistent with the definition of "device" set forth in the administrative regulations of the state department of health relating to chemical tests for alcohol pursuant to § 14-227a.[2] The court's ruling in admitting the evidence was correct. "It is not for the court to say that some other language or provision would have expressed the legislative intent better than the language used." *Muller* v. *Town Plan & Zoning Commission,* supra. For a case dealing with the application of this statute to a blood test, see *State* v. *Tarcha,* 3 Conn. Cir. Ct. 43, 47.

The defendant also assigns error in the court's ruling on the evidence heretofore considered, claiming that duplicate "tests" were required at the time the sample was collected. Since we have already decided that "test" used in subsection (b) (4) refers to the test made by Dr. Ellenberger in the state laboratory, it becomes necessary only to apply our construction of the statute to the defendant's claim. In support of his contention, the defendant cites

---

[2] "[Conn. Dept. Regs.] Sec. 14-227a-1. DEFINITIONS. For the purposes of sections 14-227a-1 to 14-227a-9, inclusive, the following terms shall have the following meanings: . . . (d) 'Device' or 'chemical test device' means any apparatus by means of which equivalent blood alcohol concentration is indicated or recorded on a dial, meter, scale or chart activated by a chemical reaction between a sample introduced and appropriate chemicals in a chamber, tube or vessel within such apparatus. The term 'device' shall not be construed to include sampling and other analytical equipment conforming to specifications in methods approved by the commissioner. (e) 'Equipment' means the usual and customary laboratory and sampling instruments and apparatus other than those defined as devices. . . ." (Dec. 24, 1963.)

§ 14-227a-9 (b) of the regulations of the department of health for chemical tests for alcohol, entitled "Conduct of tests," which provides that "[a]ll chemical tests shall be performed in duplicate. Results of duplicate tests shall correspond within plus or minus 0.01%." The defendant argues that two separate samples of the defendant's breath becomes necessary, otherwise duplicate tests become meaningless. Whatever merit there may be in testing two samples of the defendant's breath loses its force for the reason that the statute makes no such provision. It is evident that two chemical tests are required to remove any margin of error in determining the results of the tests performed by the operator. There was evidence that duplicate tests were performed by the state's toxicologist. The court's ruling was correct.

There is no error.

In this opinion KINMONTH and MACDONALD, Js., concurred.