BILL KELLY, SUBSTITUTE ADMINISTRATOR, ETC., ET AL.

V.

R.S. JONES AND ASSOCIATES, INC., ET AL.

Record No. 900980

June 7, 1991

Present: All the Justices

*Donald E. Earls* for appellants.

*William W. Eskridge (Richard E. Ladd, Jr.; Penn, Stuart, Eskridge & Jones*, on brief), for appellee R.S. Jones and Associates, Inc.

*Elsey A. Harris, III (Mullins, Thomason & Harris*, on brief), for appellees Piedmont Aviation, Inc., Avco Corporation and Pompano Air Center, Inc.

JUSTICE LACY delivered the opinion of the Court.

In this consolidated appeal we consider whether release agreements, executed incident to a wrongful death claim arising from an airplane crash, constitute an accord and satisfaction barring the subsequent assertion of a wrongful death claim.

On October 12, 1987, Judy Phipps Jones died when the airplane in which she was a passenger crashed in Pompano Beach, Florida. On November 9, 1989, Christina Phipps, the only child of Judy Jones, filed a motion to intervene and vacate an order issued by the Circuit Court of Wise County on February 17, 1988. That order approved a settlement in which William G. Jones, Judy Jones's husband at the time of the crash and the original administrator of her estate, released R.S. Jones and Associates, Inc., the owner of the plane, from any claim which he might have as a result of the death. In return for the release, William Jones and Christina Phipps each received $25,000. In addition to seeking to vacate the approval order, Christina Phipps sought the entry of an order disapproving the settlement.

Bill Kelly, substitute administrator for the estate of Judy Jones, filed the second action, a wrongful death action, against R.S. Jones and Associates, Inc.; the estate of Ben A. Jones, the pilot; Piedmont Aviation, Inc., a business that performed maintenance on the plane; Textron, Inc. and Avco Corp., the designers and builders of the plane; and Pompano Air Center, Inc., the business which had inspected and performed maintenance on the airplane immediately prior to its takeoff and crash. The defendants filed

motions to abate, pleas of the statute of limitations, and pleas of accord and satisfaction.

The trial court held an *ore tenus* hearing on December 12, 1989, at which both the wrongful death action and the motion to intervene and vacate the 1988 order were considered. After submission of briefs, the trial court denied the defendants' motion to abate and pleas of the statute of limitations and sustained the pleas of accord and satisfaction in the wrongful death action. The trial court also denied Phipps's motion to intervene and vacate the February 17, 1988 order. We granted a consolidated appeal to the court's denial of Phipps's motion and its grant of the pleas of accord and satisfaction.[1]

## I. THE WRONGFUL DEATH ACTION

### A. 1989 Release

■ To sustain their pleas of accord and satisfaction, the defendants had the burden of proving the offer and acceptance of an agreement in settlement of a disputed claim. *John Grier Constr.* v. *Jones Welding and Repair*, 238 Va. 270, 272, 383 S.E.2d 719, 720 (1989). To meet this burden, Piedmont Aviation, Avco, Pompano Air Center, and Textron (releasees) rely on a release they executed on May 22, 1989 with Christina Phipps, R.S. Jones and Associates, and William G. Jones, in his individual capacity and as administrator of Judy Jones's estate (releasors). The releasors received $350,000 for the release of all claims they had or might have had against the releasees, as a result of the airplane crash in which Judy Jones died.

The terms of the release included a statement that it "may be treated as an absolute defense and shall forever be [a] complete bar to the commencement or prosecution of any action or proceeding whatsoever by Releasors or anyone acting on behalf of the Releasors against Releasees."

Paragraph 8 of the release stated that the "validity, effect and enforceability, as well as all the rights of the parties hereto regarding this Agreement shall be governed, construed and interpreted solely in accordance with the laws of the State of Virginia."

---

[1] In light of our disposition of the case, consideration of the defendants' assignments of cross-error is unnecessary.

A second agreement, delineating the distribution of the $350,000 among the releasors, was executed the same day by William Jones, individually and as administrator of the estate, Christina Phipps, and R.S. Jones and Associates. Under this agreement, Christina and William each received $112,500. R.S. Jones and Associates received $35,000. Pursuant to the terms of a previous settlement, amounts were also set out for attorneys' fees and R.S. Jones and Associates' insurer. The distribution agreement stated that the parties agreed to the distribution "pursuant to Subsection [sic] 8.01-55 of the Virginia Code and other applicable law" and that the agreement would be presented to a Virginia court to request "approval of the settlement and the Agreement."

Christina Phipps testified that the release and the distribution agreements were explained to her; that she had consulted an attorney who was not associated with the proceedings about them; that prior to signing the release and distribution agreements she had inquired about her ability to obtain a greater share of the settlement proceeds and was told it would be difficult; that William Jones was not present when she signed the documents; that she understood the documents and, although a minor at the time of the accident, was of legal age when she executed them; and that she accepted and has used her portion of the proceeds and would not be able to repay them. William Jones's testimony was consistent with Christina's.

■ This evidence supports a finding of accord and satisfaction in that the releasors understood and agreed to the release and accepted funds paid to them under the release and distribution agreements.

Nevertheless, Kelly asserts that the release is invalid because it was not approved by a Virginia court. Kelly argues that the parties chose to have the release governed by Virginia law and, relying on Va. Code §§ 8.01-55 and -425, contends that Virginia law requires court approval of the release. He concludes that, because neither agreement was submitted to or approved by a Virginia court, neither agreement can form the basis of an accord and satisfaction.

■ Kelly correctly construes § 8.01-55 as mandating court approval of the compromise of a wrongful death claim regardless of whether a suit is pending on the claim. *Caputo* v. *Holt*, 217 Va. 302, 305, 228 S.E.2d 134, 137 (1976). However, the statute does

not apply to all wrongful death claims. By its very terms, it is restricted to claims "arising under or by virtue of § 8.01-50," the Virginia wrongful death statute. The Virginia wrongful death statute has no extraterritorial effect, *Sherley* v. *Lotz*, 200 Va. 173, 176, 104 S.E.2d 795, 798 (1958); *Withrow* v. *Edwards*, 181 Va. 344, 354, 25 S.E.2d 343, 348 (1943), and Kelly himself states that this claim arises under the Florida wrongful death statute.

Kelly also relies on § 8.01-425, which authorizes a fiduciary to compromise a liability due to or from him "provided that such compromise be ratified and approved by a court . . . . [W]hen such compromise shall have been so ratified and approved, it shall be binding on all parties in interest before such court." Although Kelly asserts that this section, like § 8.01-55, is mandatory, we have not previously addressed this issue.

■ We have long recognized that under the common law a fiduciary has the right to compromise claims of and against the estate without court approval. *Lake* v. *Pattie*, 116 Va. 130, 134-35, 81 S.E. 78, 80 (1914); *Turpin* v. *Chesterfield C. & I.M. Co.*, 82 Va. 74, 77-78 (1886). If, however, the administrator did not seek court approval, he could be liable for *devastavit* if he did not act in good faith, with ordinary prudence, and with due regard for the estate's interests. *Denny* v. *Searles*, 150 Va. 701, 735, 143 S.E. 484, 494 (1928); *Turpin*, 82 Va. at 78. When these cases were decided, the predecessor to § 8.01-425 was already part of the Code of Virginia in virtually the same terms. Although not explicitly stated in the cited cases, their implicit holding would permit the fiduciary to compromise a claim without court approval. If the compromise should be approved by the court, subsequent challenge would be precluded in accordance with § 8.01-425.

■ We decline to adopt Kelly's interpretation that § 8.01-425 requires that, to be valid, compromises made by a fiduciary must be approved by a court. Rather, we hold that the provisions of § 8.01-425 are permissive. Subsequent litigation of a compromise executed by a fiduciary without court approval may void the compromise as to some or all of the affected parties in interest; however, the compromise is not void at its inception, merely voidable under appropriate circumstances. This holding is in concert with decisions in other jurisdictions which have considered the question. *E.g.*, *Arledge* v. *Ellison*, 247 Ala. 190, 194, 23 So.2d 389, 391 (1945); *Appeal of Johnson*, 71 Conn. 590, 595, 42 A. 662, 666 (1899); *In re Barber's Estate*, 205 Misc. 596, 598, 129

N.Y.S.2d 139, 141, *aff'd*, 283 App. Div. 785, 128 N.Y.S.2d 902, *appeal denied*, 283 App. Div. 870, 129 N.Y.S.2d 917 (1954); *Nunner* v. *Erickson*, 151 Or. 575, 618, 51 P.2d 839, 856 (1935); *see also* Annotation, *Power and responsibility of executor or administrator to compromise claim due estate*, 72 A.L.R.2d 191, 207-10 (1960), and Restatement (Second) of Trusts § 192 (1959).

■ Here, the failure to present the 1989 release for approval by a Virginia court did not affect the validity of the release. Kelly has not asserted any other ground for invalidating the release, stating that he "cannot in good faith argue that these Defendants were conspirators to . . . fraud." Furthermore, Kelly does not seek to repudiate or rescind the release and has made no offer to return or tender the proceeds received as a result of the release. Christina Phipps testified she could not return the proceeds she received from this settlement.

■ On the basis of this evidence, we conclude that the release was a valid agreement to settle a disputed claim and was accepted by the parties to the release. Therefore, the trial court correctly sustained the pleas of accord and satisfaction asserted by Pompano, Piedmont, Textron, and Avco, and properly dismissed them as defendants in Kelly's wrongful death action.

## B.  The 1988 Release

R.S. Jones and Associates based its plea of accord and satisfaction on a release executed in 1988 by William G. Jones, individually and as administrator of Judy Jones's estate. In that agreement Jones, on his own behalf, on behalf of the estate, and on behalf of "any person who might have a claim for the death of Judy P. Jones," released R.S. Jones and Associates from any claims which he may have had on account of the death of Judy Jones. In consideration of this release William Jones and Christina Phipps each received $25,000, as we have said. The release also provided that "all questions regarding this agreement are to be governed by Virginia law." This release was submitted for, and received, Virginia court approval by order entered February 17, 1988.

■ R.S. Jones and Associates asserts that the 1988 release is valid under both Virginia and Florida law and, therefore, supports its plea of accord and satisfaction. We agree.

██ The primary difference between this release and the 1989 release is that Christina Phipps did not personally execute the 1988 release as she did the 1989 release. William Jones, as the personal representative and administrator of Judy Jones's estate, was the only signatory. No argument is or could be made that the statutory beneficiaries must also personally execute the release, and no question is raised as to the authority of the personal representative to prosecute and to settle the claim.

██ The testimony is conflicting on the question whether Christina Phipps was consulted about or informed of the settlement prior to February 17, 1988. Nevertheless, it is undisputed that she accepted and has used the $25,000, knew that the money came from the settlement, and did not voice any objections to the amount or the terms of the settlement prior to the institution of this wrongful death action. This evidence is sufficient to meet R.S. Jones and Associates' burden to establish the elements of accord and satisfaction.

██ Kelly assigns two grounds for the invalidity of this release. First, he argues that irregularities in the proceeding approving the release render the approval void, and, without valid court approval, the 1988 release is void.[2] We need not address Kelly's allegation of procedural irregularities because, as discussed above, this wrongful death claim arose under the Florida wrongful death statute and, therefore, court approval of the compromise pursuant to § 8.01-55 is not required, and the failure to obtain court approval under § 8.01-425 does not render the release invalid.

Next, Kelly asserts that the 1988 release is invalid because it was the result of constructive fraud based on a breach of fiduciary duty. Kelly predicates his position on the fact that William Jones was an employee of R.S. Jones and Associates, and that he consulted the same attorney who was representing R.S. Jones and Associates. Kelly asserts that execution of the release violated William Jones's fiduciary duties to Christina Phipps because Jones was in a position with conflicting interests.

██ While these facts describe relationships that might involve conflicts of interest, they do not show, without more, constructive

---

[2] Kelly alleges that the February 17, 1988 approval order was void because: the order was not endorsed by any party or by counsel; the petition for approval actually was not filed until one week after the approval order was entered; and Phipps, a party in interest, was neither served with process nor convened at the approval hearing pursuant to §§ 8.01-55 and -425.

fraud or a breach of fiduciary duty. Furthermore, the record also reveals that William Jones's decision to settle the claim against R.S. Jones and Associates was based on a number of factors. Of special significance was the fact that Ben Jones, often hired by R.S. Jones and Associates to fly the plane, did not have a pilot's license. This fact, although unknown to R.S. Jones and Associates at the time, created an arguably valid ground for R.S. Jones and Associates' liability insurance carrier to deny policy coverage. The insurer had, in fact, asserted this policy defense during negotiations. William Jones also testified that, in his opinion, based on his review of the FAA accident report and on his personal knowledge of the condition and maintenance of the plane by R.S. Jones and Associates, "R.S. Jones had no liability." Based on this record, Kelly has failed to produce evidence of a breach of a fiduciary duty or any type of constructive fraud which would justify the invalidation of the 1988 release.

Accordingly, we are of opinion that the trial court properly sustained R.S. Jones and Associates' plea of accord and satisfaction and dismissed Kelly's wrongful death action against them.

## II. MOTION TO INTERVENE

■ Finally, Christina Phipps appeals the trial court's denial of her motion to intervene in the suit to approve the 1988 settlement, to vacate the February 17, 1988 approval order, and to enter an order disapproving the 1988 release and settlement. She points to the same procedural errors Kelly relied on in the wrongful death suit and similarly argues that invalidation of the 1988 approval order is required. As we have previously observed, defects in the approval process would not invalidate the release and settlement. Consideration of the release on its merits would be required. The trial court engaged in that analysis in connection with the wrongful death action, as did we, and there is no reason to revisit the issue. In the wrongful death case, we declined to invalidate the 1988 release. Phipps's motion seeks the same relief on the same grounds. Therefore, consideration of Phipps's motion would be duplicative and is unnecessary.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*