BERTHA H. PELTIER CALLAHAN (TRUSTEE UNDER WILL OF MARIE L. P. FOURNIER) *vs.* ALMAS PIERRE PELTIER ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 8th—decided February 13th, 1936.

*Arthur T. Keefe,* for the plaintiff as trustee, individually and guardian.

*Thomas E. Troland,* for Almas Pierre Peltier *et als.*

HINMAN, J. The facts stipulated for the purposes of this reservation include the following: The will of Marie L. P. Fournier, late of New London, after making various specific devises and bequests, in paragraph 12th gave, devised and bequeathed the residue of her property to her brother Oscar E. Peltier, and her sister Bertha H. Peltier Callahan, jointly, in trust, they to receive all income therefrom, share and share alike, during the term of the trust. The next paragraph, which is the one involved in this reservation, provided

as follows: "Said Trust created under Article 12th to cease and terminate upon the death of my brother Oscar E. Peltier. Then and at that time, to be distributed as follows; viz: I give, devise and bequeath the rest and residue; Five Thousand Dollars or the equivalent thereof to my brother Almas Pierre Peltier, if he be living. One Thousand Dollars or the equivalent thereof to Almas Pierre Peltier, Jr., if he be living. Six Thousand Dollars or the equivalent thereof to my niece Reina Demers Chagnon, if she be living, otherwise her portion (Reina Demers Chagnon) to be apportioned between all her children then living. The balance and remainder, I give, devise and bequeath absolutely to my sister Bertha H. Peltier Callahan and her son Edward H. Callahan, Jr., share and share alike, or the survivor. In the event that neither Bertha H. Peltier Callahan nor Edward H. Callahan Jr. should survive my brother Oscar E. Peltier; Then I give, devise and bequeath the portion devised and bequeathed under section 13 to Bertha H. Peltier Callahan and Edward H. Callahan, Jr., as follows; one third to Reina D. Chagnon, if she be then living, otherwise to her heirs, one third to Almas Pierre Peltier, one third to Almas Pierre Peltier, Jr. If either of the last two mentioned beneficiaries should not be living at that time, then I give, devise and bequeath the portion devised to each of them, to my niece Reina D. Chagnon and to her heirs."

The will was executed February 13th, 1929, and the testatrix died on July 25th, 1931. The will was admitted to probate, the executors therein named were confirmed by the Court of Probate and duly qualified, and on December 22d, 1932, the final account of the executors was accepted and the persons named in the will as trustees qualified and acted as such until May 1st, 1934, on which date Oscar E. Peltier died, and

under the terms of the will the trust terminated. The remainder of the principal of the trust consists of two parcels of land and buildings thereon in New London, having an inventory value of $21,000 and $8000, respectively, and a mortgage, due February 25th, 1944, on real estate in New London, for $32,000. One of the pieces of real estate is subject to a mortgage for $4000, which was authorized by the Court of Probate to provide funds for the payment of debts and administration expenses of the estate. All the primary beneficiaries under paragraph 13th of the will are now living. The questions upon which our advice is desired are stated in connection with the discussion of each, respectively.

The first and large question is: "What is the meaning and proper construction to be given to the language '$5,000 or the equivalent thereof;' '$1,000 or the equivalent thereof;' '$6,000 or the equivalent thereof' as used in Paragraph 13th of the will?" Almas Pierre Peltier, Almas Pierre Peltier, Jr., and Reina Demers Chagnon claim that these provisions are to be construed to require that payment be made to them, if not in cash, "in something having the character of dollars," of value equal to that sum in dollars and which can readily and presently be converted into that sum in cash. The remaindermen contend that payment may be made in property, of value equal to the specified sums, respectively, which may consist of an undivided interest in real property of the estate. The principle is too familiar to require supporting citations that in testamentary construction regard is to be had not only to the words directly under scrutiny but also to the context created by other provisions of the will, and to the surrounding circumstances. Broadly, "equivalent" means "equal in value, worth, force, or significance." Webster's New International Diction-

ary (2d Ed.); *Kelley* v. *Clark,* 23 Idaho, 1, 14, 129 Pac. 925; *McLean* v. *Moran,* 38 Mont. 298, 301, 99 Pac. 921. However, the significance to be attached to the term in each instance depends somewhat upon the connection in and purpose for which it is used.

In the cases which have involved a construction of it, the subject-matter occasioning its use has had a bearing upon the meaning and effect ascribed to the word as there employed. *Kellogg* v. *Muller,* 68 Tex. 182, 4 S. W. 361, involved an authorization to sell goods "converting same into cash or its equivalent," and it was held (p. 184), appropriately to the nature of the transaction, that an equivalent for cash "must be something commercially as good" or "that could readily be converted into cash at a fixed price." So a note calling for the payment of a stated sum "in gold or its equivalent," was held to require, for its discharge, "something having the character of dollars." *Holt* v. *Given & Co.,* 43 Ala. 612, 616; *Ogden* v. *Slade,* 1 Tex. 13, 14. In *Robinson* v. *Noble's Administrators,* 33 U. S. (8 Pet.) 181, 199, 8 L. Ed. 910, 917, it was held that under an agreement that payment for certain freight charges was to be in the paper of a specified company or its equivalent, the amount recoverable was not the full amount, in specie, of the paper which had greatly depreciated, but only the specie value of the paper at the time payment should have been made. *Atlantic Christian College* v. *Hines,* 198 N. C. 622, 626, 13 S. E. 797, involved a subscription to an endowment fund conditioned upon other contributions of a stated amount in "cash or securities equivalent to cash." In *Security & Bond Deposit Co.* v. *State ex rel. Seney,* 105 Ohio St. 113, 120, 136 N. E. 891, receiving deposits of Liberty bonds was held to bring the appellant within the statutory definition of a "bank" as including any corporation receiv-

ing "money, or its equivalent," on deposit as a business. In *McLean* v. *Moran,* supra, in construing a statute, personal service on a nonresident defendant was held the equivalent—"of equal worth"—of service by publication and mailing.

Here, also, the circumstances and the other provisions of the will may be regarded as helpfully significant. In it the testatrix "gives, devises and bequeaths" several specific pieces of real estate and certain stocks and bonds, also "gives and bequeaths" several small legacies which clearly are purely pecuniary. It thus appears that the testatrix was informed as to the form and manner of making bequests of the latter nature and able to make them when so intended. In the 13th paragraph she "gives, devises and bequeaths" to Almas Pierre Peltier, Almas Pierre Peltier, Jr., and Reina D. Chagnon, specified sums "or the equivalent thereof." The will was executed in 1929, the testatrix died in 1931. It appears from the stipulated facts that at the testatrix's death her estate consisted so largely of real estate and mortgage interests therein that the executors were under the necessity of mortgaging real estate in order to provide funds for the payment of debts and administration expenses. Especially in view of the relatively short time intervening between the making of the will and its taking effect, and the absence of facts of record indicating any material change, it is a fair inference that the property situation was not materially different at the former date. The specific devises which were made appear to have disposed of all of the smaller real-estate holdings, leaving, at least for the purposes of the paragraph (13th) of the will now under examination, only two pieces of real estate, appraised at $21,000 and $8000, respectively, and one mortgage of $32,000. The testatrix may well have contemplated

such a result and that, on the termination of the trust, it might not be feasible, without sacrifice and prejudice to the interests of the estate and the remaindermen, to raise and provide funds to satisfy, in cash, the bequests of fixed amount then to become payable. However, in the paragraph (12th) creating the trust, she gave the trustees authority to sell real estate and reinvest the proceeds, "during the trust," which created a possibility that at the end of the trust period the real estate might have been converted into cash or other forms of property. These contingencies may well have led the testatrix to provide for alternatives appropriate to either situation—for satisfaction of these legacies in cash if available in the then condition of the assets of the estate, otherwise out of such other property as should constitute those assets—the latter alternative contemplating and permitting, if conditions so dictated, distribution, to these beneficiaries, of undivided interests, of the required value, in real estate. We construe this to be the intent expressed by this provision of the will.

Second. "Is the Trustee obligated to sell property and to pay the distributive share of Almas Pierre Peltier, Almas Pierre Peltier, Jr., and Reina Demers Chagnon in cash?" The trust terminated upon the death of Oscar E. Peltier on May 1st, 1934; the functions of the surviving trustee end with the acceptance of a final trustee's account, and distribution in accordance with the 13th paragraph of the will reverts to the Court of Probate, to be effected in accordance with the relevant provisions of the statutes. General Statutes, §§ 4894, 4893, 4977, 4945; *Clement* v. *Brainard,* 46 Conn. 174, 179; Cleaveland, Hewitt & Clark, Connecticut Probate Law & Practice, pp. 809, 311. The Court of Probate may, in its discretion, order sale of any of the real estate if conditions render it necessary

or advantageous. General Statutes, § 4945; *Candee* v. *Candee,* 87 Conn. 85, 88, 86 Atl. 758; *Buel's Appeal,* 60 Conn. 63, 67, 22 Atl. 488; *Dorrance* v. *Raynsford,* 67 Conn. 1, 7, 34 Atl. 706. Sale is warranted if it is found that the character of the real estate is such that it cannot be beneficially divided and that it is for the best interests of the distributees that it be sold and the proceeds distributed. *Candee* v. *Candee,* supra, p. 89. Disadvantage from a substitution of undivided interests in real estate for cash payment which, it is claimed in argument for a construction of the will precluding it, would accrue to the recipient would be a proper consideration upon an application for an order for such sale.

Third. "Are the shares of Almas Pierre Peltier, Almas Pierre Peltier, Jr., and Reina Demers Chagnon undivided interests in the property on hand for distribution equal to or equivalent to the values of $1,000, $5,000 and $6,000 respectively?" As appears from what has already been said, these shares may be undivided interests unless that method of satisfaction is obviated, as by a sale ordered by the Court of Probate and distribution, instead, of the proceeds.

Fourth. "Are [these] beneficiaries . . . entitled to, interest on their bequests from May 1st, 1934, to the date of payment?" We have construed these bequests as contemplating, primarily, payment in cash although permitting, if conditions so dictate, satisfaction by an equivalent in other property. The will makes the time of payment the termination of the trust, which occurred as of May 1st, 1934. The applicable rule as to interest is that appropriate to legacies payable at a time fixed by the will, under which interest is allowable from that time. *Bartlett* v. *Slater,* 53 Conn. 102, 106, 22 Atl. 678; *Duffield* v. *Pike,* 71 Conn. 521, 530,

42 Atl. 641; Cleaveland, Hewitt & Clark, Op. Cit., p. 683.

Fifth. If they are obligated to take their distributive shares in property equivalent to or equal in value to the amounts set forth in paragraph 13, as of what date should such values be taken? The general rule is that distribution is to be made according to the value of the property at the time of distribution. *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 375, 167 Atl. 808; *Clement* v. *Brainard,* supra, p. 180; Cleaveland, Hewitt & Clark, Op. Cit., p. 810. We see no reason why this rule should not be applied in the present situation if real estate is distributed instead of cash. If the original appraisal does not fairly represent the value at the time of distribution a revaluation would be proper. *Platt* v. *Platt,* 42 Conn. 330, 346.

Our answers to the questions are as follows: First. The "equivalent" of the amounts specified in terms of dollars is property other than cash equalling in value those amounts, respectively. Second. No, but sale of property by the executors and payment in cash may, upon reasonable cause shown, be ordered by the Court of Probate. Third. The shares are not necessarily, but may be, undivided interests in the property on hand for distribution. Fourth. Yes. Fifth. As of the date of distribution.

No costs will be taxed in this court.

In this opinion the other judges concurred.