BEVERLY MARSHALL v. HARRY H. KLEINMAN, CONSERVATOR (ESTATE OF CHARLES H. MILLER) (No. 10080)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued October 9, 1981—decision released January 19, 1982

*Wayne W. Sargent,* for the appellant (plaintiff).

*George C. Hastings,* with whom were *Thomas McDonald,* and, on the brief, *Charles L. Howard,* for the appellee (defendant).

PARSKEY, J. This appeal, docketed as No. 10080, concerns a judgment ordering the defendant, conservator of the estate of Charles H. Miller, to sell three parcels of real property comprising approximately 27.97 acres of vacant land located off Old Windsor Road in Bloomfield.[1]

On October 17, 1979, the Probate Court ordered the sale of the ward's property on Ledyard Street and Old Windsor Road to alleviate cash flow problems of the estate. The plaintiff appealed from the

---

[1] On the same day, the trial court approved the sale of property located at Nos. 510–512 Ledyard Street in Hartford. A separate appeal was taken from the judgment concerning the Hartford property, which we addressed in docket No. 10079. This opinion considers only the approval of the sale of the Bloomfield property.

order to the Superior Court. On February 5, 1980, after a trial de novo, the trial court found that the sale of the Bloomfield property for $62,000, less a real estate brokerage commission, was in the best interests of the estate. The plaintiff then appealed to this court, claiming that the sale was not in the best interests of the estate because the sale price did not reflect the fair market value of the property.

In an appeal from probate, the Superior Court exercises the limited statutory jurisdiction of the Probate Court. *Pastir* v. *Bielski,* 174 Conn. 193, 194, 384 A.2d 367 (1978). The trial court conducts a trial de novo and makes an independent determination of the issues raised in the appeal. *Prince* v. *Sheffield,* 158 Conn. 286, 299, 259 A.2d 621 (1969). In so doing, to the extent that special responsibility is imposed by law on the Probate Court with respect to any of the parties, the Superior Court on appeal is charged with the same responsibility.

The performance of all of the conservator's official duties comes under the supervision and control of the Probate Court. *Johnson's Appeal,* 71 Conn. 590, 597–98 (1899); *Elmendorf* v. *Poprocki,* 155 Conn. 115, 118, 230 A.2d 1 (1967); 2 Locke & Kohn, Conn. Probate Practice § 695. "A conservator is to manage all the estate of his ward and apply so much of the net income and, if necessary, so much of the principal as is necessary to support the incapable person and his family and to pay his debts." Cleveland, Hewitt & Clark, Probate Law and Practice § 569, p. 855. The ward has no right to possession or control as against the conservator of the ward's estate. *Johnson's Appeal,* supra, 597; Folsom & Wilhelm, Conn. Estates Practice: Commitment, Conservatorship, Guardianship, Adoption (Rev. Ed. 1979) § 61, p. 184.

In short, the ward is powerless to control his own affairs, the conservator occupies a fiduciary relationship to him, and the Probate Court has an affirmative duty to protect the ward's assets. Although General Statutes § 45-238 authorizes a sale of the ward's real estate if the court finds such sale is in the best interests of the parties, in exercising its discretion in ordering such sale the court must determine that the conditions render it necessary or advantageous. *Offredi* v. *Huhla,* 135 Conn. 20, 22, 60 A.2d 779 (1948); *Callahan* v. *Peltier,* 121 Conn. 106, 112–13, 183 A. 400 (1936). In discharging its affirmative duty to the ward, the court is required to determine not only whether the real estate should be sold at all but, if so, whether the proposed sale price is fair. Where, because of the sale of other assets, there is no immediate need for the sale of a particular parcel of real estate, the sole question before the court is whether the sale is advantageous to the estate. *Offredi* v. *Huhla,* supra. If, in determining the latter issue, reliance must be placed on expert opinion and that opinion is in turn based upon a certain factual foundation, the court, in discharging its affirmative duty to preserve and protect the ward's assets, should satisfy itself that the factual foundation is not built on quicksand.

Two appraisers testified at the trial. The defendant's appraiser evaluated the land from two perspectives. If purchased by an abutting landowner, the land was worth about $14,000, or $500 per acre. If purchased by a nonabutter, the land was worth about $2800, or $100 per acre. His appraisals were affected by his belief that the use of at least one-half of the property was regulated under the Inland

Wetlands and Water Courses Act[2] (hereinafter the act). The plaintiff's appraiser evaluated the value of the land at between $224,000 to $336,000, or from $8000 to $12,000 per acre. It was his belief that the act did not affect the property. The wide discrepancy between the appraisals clearly stems from each appraiser's opinion on whether the land is subject to wetlands restrictions.

Towns are authorized to establish boundaries of inland wetlands areas in their towns; General Statutes § 22a-42a (a); Regs., Conn. State Agencies § 22a-39-4.6; and to promulgate regulations to protect wetlands in the town. General Statutes § 22a-42 (c). The boundaries so established by the town and shown on its boundary maps are taken from the National Soils Survey maps. Tondro, Connecticut Land Use Regulation, p. 128 (1979); see also General Statutes § 22a-38 (15).[3]

The defendant's appraiser relied upon his experience with other land in the same area restricted by the act and on a discussion with the town assessor which gave him the general impression that approximately one-half of the property was subject to the act. The plaintiff's appraiser based his evaluation on the national soil map and on his familiarity with the soil; from his background he appears to have been qualified to make such an assessment. He testified that the property except for the entrance was not within the wetlands boundaries on the national

[2] General Statutes §§ 22a-36 through 22a-45. The wetlands restricted by the Inland Wetlands and Water Courses Act are defined to be "land . . . which consists of any of the soil types designated as poorly drained, very poorly drained, alluvial, and flood plain by the National Cooperative Soils Survey, as may be amended from time to time, of the Soil Conservation Service of the United States Department of Agriculture . . . ." General Statutes § 22a-38 (15).

[3] See footnote 2, supra.

map and that the soil type of the entrance was not any of the wetlands soil types because it had been drained. Neither appraiser had examined the town map in the town hall. The court credited the testimony of the defendant's appraiser because he had checked with the assessor about the information contained on the assessor's card.

Evidence admitted without objection remains evidence in the case subject to any infirmities due to any inherent weaknesses. *Danahy* v. *Cuneo*, 130 Conn. 213, 217, 33 A.2d 132 (1943). The trier may not, however, rely only on hearsay evidence which is lacking in rational probative force. See *New Haven* v. *Public Utilities Commission*, 165 Conn. 687, 723, 345 A.2d 563 (1974). "If the evidence has no probative force, or insufficient probative value to sustain the proposition for which it is offered, the want of objection adds nothing to its worth and it will not support a finding." McCormick, Evidence (2d Ed.) § 54, p. 126.

The evidence does not reasonably support the low valuation accepted by the court. The defendant's appraiser, whom the court credited, checked neither the town map nor the national map upon which the town map is based. The plaintiff's appraiser checked the national map and testified to the soil type. Furthermore, since the prospective purchaser was a nonabutter, the applicable evaluation by the defendant's appraiser was $2800, not the $14,000 which the court found. In accepting the $14,000 figure and applying it to a nonabutter, the trial court was using a figure which was five times the evaluation given by the defendant's appraiser and in approving a sale for $62,000 it was accepting an amount which was more than twenty times the

appraisal. The amount of the offer itself suggests that the status of the land was other than that stated by the defendant's appraiser.

The trial court erred in deciding the wetlands issue, which had such a substantial impact on the depletion of the assets of the ward, on the basis of testimony with little probative worth. In these circumstances, the judgment cannot stand.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion Speziale, C. J., and Healey, J., concurred.

ARMENTANO, J. (dissenting). I disagree with the majority's consideration of the appraisers' testimony. The credibility of witnesses is within the exclusive province of the trier of fact. E.g., *Halperin* v. *Pine Plaza Corporation,* 180 Conn. 85, 88, 428 A.2d 340 (1980). The court's crediting of the evaluation presented by the defendant's appraiser was within its sole discretion and was supported by that appraiser's knowledge acquired by "previously working in the area" and by his testimony that the assessor's records for the town of Bloomfield designated a great part of the land as an inland wetland area. This testimony had sufficient probative value to sustain the appraisal.

The defendant testified that he had made a general effort to sell the parcel to alleviate the estate's cash flow problem, including listing the property with real estate brokers, and had accepted the highest bid from Jon S. Kerin, which was $62,000. There is no evidence that Kerin was in any way related to a party in interest in the conservatorship or was given any special treatment or

advantage. The plaintiff was given an opportunity to purchase but did not accept the conservator's offer to sell the property to her for the price offered by Kerin; nor did she produce a higher bidder. Accordingly, I cannot agree that the trial court failed properly to exercise its duty to protect and preserve the assets of the ward.

In this opinion Peters, J., concurred.