## Stuart W. Cohen *v.* Carol D. Cohen
## (4785)

Hull, Borden and Spallone, Js.

Argued April 9—decision released June 16, 1987

*Wesley W. Horton,* with whom, on the brief, was *Ruth Dreyfus,* for the appellant (plaintiff).

*Robert M. Wechsler,* with whom was *Michael Jon Barbarula,* for the appellee (defendant).

Hull, J. The sole issue in this appeal is the adequacy of the evidentiary underpinning of the trial court's award of periodic alimony to the defendant. The court's finding of operative facts and its conclusions follow.

The parties were married in 1970 and have one child, Julie, born March 30, 1973. The defendant is forty years old and has suffered from multiple sclerosis since 1975. She is deteriorating physically and mentally to the extent that she is unable to care for herself and will in the future be unable to care for herself or engage in any occupation. Her parents have come from their Florida home to assist her. Because of their age, they will be unable to continue this care and the defendant will require a live-in or full time helper.

The plaintiff is a well educated man, thirty-nine years old. He holds an executive position with Xerox Corporation where he has been employed for sixteen years. His present base salary with bonus is $96,000 per year. He has profit sharing and savings plans in the company, stock incentive programs and investments in stocks and limited partnerships. The child is living with the plaintiff and being supported by him. The defendant intends to relocate in Florida near her parents' home. The plaintiff holds funds in trust for the minor child, which should secure her education. He will receive her social security payments toward her support, and he has a disability income plan with his company. The defendant has no security for the future.

The court made certain orders which are not at issue in this case. The plaintiff on appeal claims only that the court's second order was an abuse of the court's discretion. That order provided: "Plaintiff will pay to defendant $45,000 per year as alimony in monthly installments of $3750 commencing January 1, 1986 until the wife's death or remarriage or the death of the husband, whichever event shall first occur. This award may be modified in the event of any subsequent change in the wife's medical situation or the needs created thereby."

The plaintiff moved the court to articulate further its decision as follows: (1) by articulating the basis on which the court ordered that the defendant receive $45,000 per year in alimony; (2) by articulating the amount that the court expects the plaintiff will have to expend annually for support of the minor child; and (3) by articulating the amount that the court expects the defendant will have to expend annually for live-in or full time help.

The court filed a memorandum of decision in response to the plaintiff's motion as follows: "As to Paragraph 1:

The court found that plaintiff's earnings from his company for the last year totalled $96,000, that defendant was incapable of earning anything since she suffered from totally delibitating Multiple Sclerosis and would likely in the future have increasing living expenses. Defendant shows in her affidavit of October 4, 1985 the need for $5482.95 a month including $2500 a month for Home/Health Aid. There is no question that defendant requires such aid and perhaps more, but the court saw fit to reduce the claim for the present but noted in its decision that it may require modification if the medical situation of the wife changes. Since defendant is permanently disabled, the alimony award was not limited in time.

"*As to Paragraph [2]* The court was not requested to find an amount that plaintiff would have to spend annually for support of the minor child. He will have, however, realized on the court's award of alimony the sum of $45,000[1] per year plus $4752 from Social Security Disability payments which he will receive as custodian of the child and which alone should provide ample funds for her support. There are also custodial funds of $30,000 set aside for her education.

"*As to Paragraph [3]* The defendant offered evidence as to Home/Health Aid to substantiate her claim for $2500 per month. The court made no finding as to the exact amount required but reduced defendant's claim by $1700 in the alimony award with the finding that this award may be modified in the event of subsequent change in the wife's medical situation. Since defendant is moving to Florida and her expenses there may differ from the expenses in Connecticut, such modification should be applied for."

---

[1] The court is in error in referring to the plaintiff's realization of $45,000 per year. Since the court found that the plaintiff's salary with bonus is $96,000 per year, and the alimony payment is $45,000 per year, this figure should have been $51,000.

The plaintiff claims that the item of $2500 per month for home health care was based on double hearsay and essentially worthless evidence, so that the periodic alimony order which was substantially based on this item was an abuse of discretion.

The evidence concerning home health care costs originated in footnote 4 to the defendant's affidavit of October 4, 1985, which provides: "The expense shown for home health aids is predicated upon survey of five institutions providing similar services within lower Fairfield County. A survey of those institutions indicates that the service can be provided either on an hourly cost with the range being a minimum of $8.00 to a maximum quoted of $13.60/hour. In addition, inquiry was made concerning the cost of a full time live-in home health aid on a 7 day a week 24 hour basis. Care provided in such a manner was quoted at a minimum of $600 per week to a maximum of $665 per week. The amount shown herein on the affidavit is based upon costs as derived from the aforesaid survey. At the present time these services are being rendered by the defendant's parents, and the amount shown is to demonstrate the defendant's coverage through medicare and medicaid. The services contemplated by the above expenditure are not predicated upon skilled nursing care. Services for skilled nursing care would be an extra cost and may be partially covered by insurance." The affidavit was signed by the defendant's seventy-six year old father, Leo Soled.[2]

Soled testified that he never made inquiries as to that amount and that the defendant's attorney and his associate made the inquiries. Soled stated that the affi-

---

[2] We attach no significance to the fact that the defendant's father signed the affidavit rather than the defendant. It is undisputed that the defendant was totally disabled and not familiar with or able to manage her own financial affairs.

davit "still doesn't mean a damn thing to me." The court ruled that the case should be determined on the costs in Connecticut rather than Florida. There was no other evidence about the cost of home health care in Connecticut.

The admissibility of footnote 4 of the Soled affidavit was never specifically ruled upon by the court, nor was it offered as an exhibit. The plaintiff did not ask that the item be stricken or disregarded by the court.

The plaintiff makes various attacks on certain of the evidence supporting the alimony award. These require no discussion. We have carefully considered all such claims and find that the facts found and conclusions reached on such supporting underlying evidence were made within the court's necessarily broad discretion in domestic matters. *Kaplan* v. *Kaplan,* 185 Conn. 42, 44, 440 A.2d 252 (1981).

Thus, the plaintiff's claim essentially boils down to this. The $3750 monthly alimony award can only be sustained if there is evidence to support at least a substantial portion of her $2500 per month claim for home health care. The plaintiff claims that the only evidence on this subject, which was contained in footnote 4 of the defendant's affidavit of December 4, 1983, as commented upon by Soled's testimony, was worthless double hearsay. The plaintiff relies principally on the case of *Marshall* v. *Kleinman,* 186 Conn. 67, 438 A.2d 1199 (1982).

In *Marshall,* the plaintiff appealed to the Supreme Court from an order of the Probate Court ordering the defendant conservator to sell certain real estate owned by his ward. The Superior Court upheld the order of sale, and the plaintiff appealed to the Supreme Court claiming that the sale was not in the best interests of the estate because the sale price did not reflect the fair market value of the property. The Supreme Court

stated that the trial court, in discharging its affirmative duty to preserve and protect the ward's assets, should satisfy itself that the factual foundation is "not built on quicksand." Id., 70. The defendant's appraisal value of the land ordered to be sold was affected by the appraiser's belief that the use of at least one half of the property was regulated under the Inland Wetlands and Water Courses Act. The plaintiff's appraiser evaluated the land at a much higher figure since he believed that the act did not affect the property. The court concluded that the wide discrepancy between the appraisals clearly depended on each appraiser's opinion as to whether the land was in fact subject to wetlands restrictions. The defendant's appraiser relied upon his experience with other land in the area and on a discussion with the town assessor which gave him the general impression that approximately one half of the property was subject to the act. The plaintiff's appraiser based his evaluation on the national soil map and on his familiarity with the soil. Neither appraiser examined the town map which was recorded in the town hall. In a 3-2 decision, the Supreme Court concluded that the trial court erred in deciding a critical issue in the case "on the basis of testimony with little probative worth." Id., 73.

In analyzing the plaintiff's claim in this case, we note that, as in *Marshall* v. *Kleinman,* supra, no objection of any kind was made to the information in footnote 4 of the defendant's affidavit or to Soled's testimony concerning it. "The plaintiff challenges the court's finding by arguing that much of the evidence admitted and considered by the trial court was hearsay. This claim is both untimely and addressed to the wrong forum. Practice Book § 3063 [now § 4185]; *Aetna Life & Casualty* v. *Miscione of Connecticut, Inc.,* 193 Conn. 435, 437, 476 A.2d 577 (1984). The plaintiff did not object to the introduction of the evidence. Hearsay evidence

admitted because no objection was voiced can be considered to prove the matters in issue for whatever its worth on its face. *Sears* v. *Curtis,* 147 Conn. 311, 317, 160 A.2d 742 (1960)." *Derderian* v. *Derderian,* 3 Conn. App. 522, 528, 490 A.2d 1008, cert. denied, 196 Conn. 810, 811, 495 A.2d 279 (1985).

In addition, the plaintiff's claim of insufficiency of supporting evidence not objected to runs athwart the key role of affidavits in dissolution cases. A court is entitled to rely upon the truth and accuracy of sworn statements required by Practice Book § 463.[3] *Jucker* v. *Jucker,* 190 Conn. 674, 677, 461 A.2d 1384 (1983); *Casanova* v. *Casanova,* 166 Conn. 304, 305, 348 A.2d 668 (1974). These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence. *Jackson* v. *Jackson,* 2 Conn. App. 179, 188, 478 A.2d 1026, cert. denied, 194 Conn. 805, 478 A.2d 710 (1984). The significance of the unique role of affidavits in such cases is underscored in this case by the defendant's total disability due to multiple sclerosis. The defendant in this case chose to rely on double hearsay to establish a key element in her case. The plaintiff, however, chose to do nothing concerning the infirmities of this evidence. We look to the plain error rule in Practice Book § 4185 for analogy.[4] For, were we to

---

[3] Practice Book § 463 provides in relevant part: "At the time a motion concerning alimony, support or custody is filed, or at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, that moving party shall file a sworn statement . . . of current income, expenses, assets and liabilities . . . ."

[4] Practice Book § 4185 provides in relevant part that this court "may in the interests of justice note plain error not brought to the attention of the trial court." For a discussion of the plain error rule in this context see *C. McCormick, Evidence (3d Ed.)* § 52, p. 134.

examine, other than sparingly, the evidentiary underpinnings of a court's judgment in a case such as this, we would encourage such a trial by ambush and unnecessarily exacerbate the already lacerated equilibrium of the personal lives involved.

We must, however, make such an inquiry. The general rule is lucidly stated in C. McCormick, Evidence (3d Ed.) § 54 as follows: A "failure to make a sufficient objection to evidence which is incompetent waives any ground of complaint as to the admission of the evidence. But it has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. The incompetent evidence, unobjected to, may be relied on in argument, and alone or in part may support a verdict or finding. This principle is almost universally accepted. . . . The principle applies to any ground of incompetency under the exclusionary rules. It is most often invoked in respect to hearsay, but it has been applied to evidence vulnerable as secondary evidence [such as] writings, opinions, evidence elicited from incompetent witnesses or subject to a privilege, or subject to objection because of the want of authentication of a writing, of the lack-of-knowledge qualification of a witness, or of the expertness qualification. Relevancy and probative worth, however, stand on a different footing. If the evidence has no probative force, or insufficient probative value to sustain the proposition for which it is offered, the want of objection adds nothing to its worth and it will not support a finding. It is still irrelevant or insufficient." (Footnotes omitted.)

"Evidence admitted without objection remains evidence in the case subject to any infirmities due to any inherent weaknesses. *Danahy* v. *Cuneo,* 130 Conn. 213,

217, 33 A.2d 132 (1943). The trier may not, however, rely only on hearsay evidence which is lacking in rational probative force. See *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 723, 345 A.2d 563 (1974)." *Marshall* v. *Kleinman,* supra, 72.

The issue, then, is the probative worth of Soled's statement in his affidavit concerning nursing home costs. We conclude that the information in the affidavit is sufficiently probative to support the court's order of periodic alimony. It furnishes strong specific detail. It does not contain material that would shock the trier or assail his common sense. It specifically notes that the amount shown for home health care is meant only to demonstrate the defendant's needs. It does not claim to be an exact statement of her needs at the time of trial.

A cursory examination of Connecticut precedent buttresses our conclusion. The evidence was "available for whatever it was worth upon its face." *State* v. *Segar,* 96 Conn. 428, 437, 114 A. 389 (1921). In *Danahy* v. *Cuneo,* supra, a statement by the defendant father and owner of the car involved in an accident to the plaintiff's mother not to spare any expense for her injured son, although not objected to, was found to be not competent evidence that the driver was operating the car as a family car. The lack of relevance or probative force of such a statement is self-evident. In *Tragakiss* v. *Dowling,* 183 Conn. 72, 74, 438 A.2d 818 (1981), the court stated, however, that *"Danahy* in no way undermines the rule that when hearsay testimony is admitted without objection, the trier of fact may accord the testimony whatever credence it is worth." "A material fact cannot be said to have been found *without* evidence if there is some testimony in its support—although slight—and none to the contrary." (Emphasis added.) *Meagher* v. *Colonial Homes Co.,* 109 Conn. 343, 348, 146 A. 609 (1929).

Finally, *Marshall* v. *Kleinman,* supra, is distinguishable from the facts of this case. The gravamen of *Marshall* was that the 'testimony with little probative worth" concerned the nub of the case. In this case, the trial court stated specifically that it did not rely on the $2500 per month figure in reaching its conclusion. In fashioning its equitable formula for determining its financial orders, the court stated that it was deducting $1700 per month from the $2500 per month figure. It made evident its awareness of the evidential infirmities in the plaintiff's survey of nursing home costs. The $800 per month figure which the court factored into its orders was thus a much less significant part of the $3750 monthly alimony than was the key appraisal testimony in *Marshall* v. *Kleinman,* supra. The court specifically noted that the alimony order may be modified as the defendant's circumstances may change.

The evidential underpinnings of the court's order were adequate. The court did not abuse its wide discretion in its judgment. " '[T]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage.' " *Rubin* v. *Rubin,* 7 Conn. App. 735, 745, 510 A.2d 1000 (1986); *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975).

There is no error.

In this opinion the other judges concurred.