[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from Decree Approving Final Account of Removed Administrator entered in the Probate Court, District of Andover (Hon. Frances C. Vignati, Acting Judge of Probate).
The plaintiff, Samuel Silverstein, failed to appear for trial and was nonsuited. The matter is dismissed as to Samuel Silverstein only. Van Tienen v. Register Publishing Co., 208 Conn. 472, 474 (1990).
The named plaintiff, Morris Silverstein, is an heir of the estate and acted as administrator of the estate from March 8, 1969 through October 31, 1989, when he was removed as administrator for the improper performance of his duties. The plaintiff appealed from the order removing him as conservator and ultimately the Superior Court decision dismissing the appeal was affirmed. Morris Silverstein's Appeal from Probate, 24 Conn. App. 818 (1991).
Mr. Silverstein thereafter filed an accounting covering the period from June 30, 1982 through October 31, 1989, which is in dispute here. (He had previously filed an accounting which covered the period from February 28, 1969 — the decedent's date of death — through June 30, 1982. The Probate Court decree in connection with that first accounting was appealed to the Superior Court. Morris Silverstein v. Estate of Esther Silverstein, Superior Court, Judicial District of Tolland, D.N. 83-29489, Vasington, J.
The Court finds that the plaintiff has a legally protected interest adversely affected by the decree appealed from and is, therefore, aggrieved. Conn. Gen. Stat. Sec.45a-186.
In an appeal from probate, the Superior Court exercises the limited statutory jurisdiction and powers of the Probate Court. Marshall v. Kleinman, 186 Conn. 67, 69 (1982). Because the subject matter jurisdiction of the Superior Court is limited, issues beyond the scope of those proper for determination by the Probate Court cannot be addressed. Silverstein's Appeal from Probate, 13 Conn. App. 45 (1987). Within this limitation, however, an appeal from probate is a de novo proceeding in which any evidence relevant to the issues may be presented. Baskin's Appeal from Probate,194 Conn. 635, 641 (1984). But while a probate appeal is a trial de novo, the Superior Court should not disregard the proceedings in the Probate Court. In its determination to grant relief against a Probate decree, the Superior Court must inquire whether the Probate decree is inequitable, mistaken, or the like. Dunham v. Dunham, 204 Conn. 303, 328, CT Page 10787 (1987), citing Del Vecchio v. Del Vecchio, 146 Conn. 188, 193
(1959).
The plaintiff has filed Reasons of Appeal in accordance with Conn. Practice Book Section 194, thereby framing the issues, and they are discussed seriatim.
 I.
The plaintiff claims $218,657.00 for work done by him from July 1, 1982 through October 31, 1989 in repairing, maintaining, keeping and preserving the Estate's buildings, properties and businesses, and in doing general custodial and caretaker work.
He claims he was authorized by the Probate Judge who initially appointed him — Judge Norman Preuss — to do necessary work at the property, to keep track of his time and to pay himself for it. (Plaintiff's Exhibit 4). Judge Preuss did not, however, tell the plaintiff he could pay himself whatever he wanted to. As the administrator, he was charged with accounting to the Probate Court for the affairs of the estate, and that entailed Court approval of his accounting which would, of course, include any costs and expenses incurred. Conn. Gen. Stat. Sec. 45a-98. Clearly, the plaintiff could not be given a blank check in that regard. He is entitled to fair and reasonable compensation. 2 Locke Kohn, Conn. Probate Practice, Sec. 583, as approved by the Probate Court.
He claims that he was on call seven days a week as needed, during the years from 1982, and because of the time involved with the estate, he could not work at any other job. His request is based on a weekly wage progressing from $333.32 in 1982 to $469.82 in 1989, and totals up to $218,657.00. (Plaintiff's Exhibit 1). In addition to that amount, the plaintiff claims he performed additional management functions regarding the various business enterprises of the estate and for this additional work, he seeks $23,542.90.
The plaintiff's claims for labor and management services are summarized in Schedule J of his final accounting (Plaintiff's Exhibit 3), as follows:
$218,657.00 labor-general custodial and caretaker work
 23,542.90 additional administrator's management fees. ----------- $242,199.90
CT Page 10788
 — 31,054.43 paid to date to the plaintiff ----------- $211,145.47 balance due
The real estate in this estate included a Cider Mill valued at $1530.00 in the inventory dated April 27, 1970, a three unit apartment building valued at $9,310.00 in said inventory and a single family dwelling called a studio valued at $8,270.00, and six approved mobile home sites (one of which held a house trailer owned by the plaintiff which he rented out, plus several empty sites). The total value of the real estate was inventoried at $71,030.00.
The Probate Court found that the plaintiff's services were mostly in the nature of a watchman, although he claims that much of his labor charge was for general custodial or caretaker work. The Probate Court concluded that $200.00 per month was "more than reasonable" and allowed the plaintiff that amount for 88 months, for a total of $17,600.00.
The plaintiff's testimony before this Court as to his time and labor was not persuasive. He claimed much of his work was physical, that he frequently picked up a hammer and nail and made repairs to the property. His testimony was phrased in generalities and the time records he purportedly kept were not satisfactorily explained and cannot be accepted as accurate. Plaintiff's Exhibit 6, a notebook of time claimed spent working on the estate, was not presented to the Probate Court, but this Court attaches, at best, minimal credibility to it. For example, plaintiff claims to have spent about sixty-five (65) hours in July, 1982 on receipts and disbursements (shown as R D in the Exhibit). For the same period, his ledger (Defendant's Exhibit A) shows some eleven (11) transactions. For the month of August 1982, he claims fifty-seven (57) hours for "R D", while the ledger shows thirteen (13) receipts and thirteen (13) disbursements. This Court cannot accept the accuracy of plaintiff's time records, nor are they realistic. Nor can it rationalize that the oversight of this relatively modest estate required full time employment, or anything approaching it. The plaintiff's claim that he is entitled to be paid a full time salary because he was always on call is creative but unwarranted.
The plaintiff's testimony that most of his billing was for manual labor — that he would often pick up a hammer and nail — is belied by the condition of the property. Broken stairs were not repaired, debris and litter clutter the grounds, and the Court concludes that any maintenance was minimal. Additionally, he is unable to separate his claimed CT Page 10789 labor in connection with running the Cider Mill from the other charges and simply includes all claimed work in his $218,657.00 charge, including "making rounds" to check the property. The Cider Mill operated from September to December of each year and appears to have taken up a good part of his time, at least during those months.
The Cider Mill was discussed by Judge Vasington in connection with the plaintiff's appeal of the earlier accounting for the period through June 30, 1982. Judge Vasington pointed out that the plaintiff should have closed the Cider Mill within the first year of his appointment since the cost of keeping it open far exceeded the income it generated, and that it was unnecessary to continue the business in order to preserve it as an asset. (Defendant's Exhibit B, page 12). The plaintiff's contention that because the verbal authorization he received from Judge Preuss back in 1969 to operate the business was never withdrawn he could continue to do so is untenable. Judge Preuss testified at the trial before Judge Vasington that while he did authorize the plaintiff to keep the Cider Mill going in 1969, he would not have if he knew it operated at a loss and, further, he expected that the estate would have been settled within one year. (Defendant's Exhibit B, pages 11, 12).
For the plaintiff to continue to operate the Cider Mill after Judge Vasington's decision was not prudent stewardship of the estate. At best, the Cider Mill made about $5,800.00 seven years. For the plaintiff to charge the estate $218,657.00 in large part to make that amount of money borders on being unconscionable (the plaintiff was not able to break out with specificity what portion of his $218,657.00 is attributable to the Cider Mill).
The claim for $218,657.00, accordingly is disapproved.
The plaintiff is, however, entitled to a fair and reasonable compensation for the work done in the nature of duties beyond those associated with the usual administration of an estate. The Court does find that while the plaintiff did some minimal repair work at the property and that he was on the property periodically as an overseer, the time he claims was clearly excessive and unreasonable. While the plaintiff's bookkeeping was less than satisfactory thus making it difficult to determine with precision the number of hours spent, it would not be equitable to make no award at all for this claim.
Perhaps recognizing that, equitably, the plaintiff was entitled to some compensation for work beyond that usually CT Page 10790 associated with an administrator's duties, the Probate Court awarded $200.00 per month for eighty-eight (88) months, for a total of $17,600.00. In its decree the Probate Court found that award to be "more than reasonable for the services provided." This Court is of the opinion that said award is overly generous and is, indeed, more than reasonable. The plaintiff's time records are so questionable that they provided very little evidentiary value. There was very little specificity in the testimony as to just what was done, and how long it took. Being available or on call, or picking up a hammer and nail is not of much help in determining the value of such services, and the burden to do so is on the plaintiff. He was awarded an administrator's fee of ten percent, for monies collected, and this Court will make the same award on that claim. There is no award for the Cider Mill for the reasons herein stated. This Court is of the opinion that any labor on the rest of the property was clearly minimal, (although the actual time cannot be determined with any degree of certainty), and an administrator's duties would normally include some on site checking of the property anyway. It is this Court's opinion based on the foregoing reasons, that an additional fee of $220.00 per month is unjustified. This is not a large estate.
This Court recognizes that that the plaintiff, for equitable reasons, is entitled to some payment beyond the ten percent ordinary and usual fees of administration, but the serious shortcomings in the evidence presented should be held against the plaintiff and not the estate. For these reasons this Court finds that an award of $100.00 per month for 88 months is fair, reasonable and equitable, and awards the sum of $8,800.00.
The ten percent management fee which was allowed by the Probate Court is customary for rental management services, and this Court makes the same award of $8,628.25. The plaintiff's claim for an additional amount is unwarranted and his reasons for requesting such are unpersuasive.
 II
The plaintiff claims interest on the unpaid balance of a $45,000.00 debt due to him for pre-death services on behalf of the decedent (his mother). That debt is not in dispute. As a result of the earlier accounting in this estate, it was determined that the balance of the $45,000.00 owing to the plaintiff was $25,485.00. That balance was arrived at by crediting the estate for $19,515.00 which the plaintiff paid to himself from the estate without Probate Court approval. CT Page 10791 (Exhibit B, p. 19-20).
In connection with his final accounting here in dispute, the Probate Court found that he improperly paid himself $31,054.43 as partial payment for his services to the estate. (Probate Court decree, December 11, 1990). The plaintiff was not authorized to pay himself a fee without approval of the Probate Court. Under these circumstances, this Court will not surcharge the plaintiff interest on the unauthorized payment he made to himself in the amount of $31,054.43, but he shall not be entitled to interest on the balance of $25,485.00 owed to him from the estate. In fact, in 1982, the plaintiff was ordered to reimburse the estate the sum of $18,736.37 (Exhibit B, p. 21), so the balance due the plaintiff as of June 30, 1982 was more accurately $6,748.63. Even after Judge Vasington's decision in 1982, the plaintiff continued to improperly advance himself payments from the estate. This Court finds the Probate Court correctly did not award interest to the plaintiff and disallows this claim.
 III
Lastly, the plaintiff claims that his sister, Dorothy Mitchell, continuously occupied a dwelling on the estate through October 31, 1989 without paying rent, and that the fair market rental value, which he claims is $44,240.00 should be charged against her. The Probate Court determined that Dorothy Mitchell occupied a rental unit owned by the estate until December 31, 1978, and that the fair market rental value for her occupancy was $18,770.00.
The Probate Court also found that Belle Silverstein occupied a rental unit owned by the estate until October 31, 1989, and that the fair market rental value of her tenancy was $63,010.00. This Court concludes that it does not have jurisdiction to award damages for unpaid rent. In a Probate Appeal, the Superior Court has only the limited jurisdiction and powers of the Probate Court, Marshall v. Kleinman, supra; Silverstein's Appeal from Probate, supra. A Probate Court cannot award damages, Palmer v. Hartford National Bank Trust Co., 160 Conn. 415, 430 (1971). It is settled that title to real estate vests in the heirs at the time of death of the owner. The administrator does not take title to the real estate. Pollard v. Zoning Board of Appeals, 186 Conn. 32,42 (1982). Esther Silverstein died intestate leaving four children, each of whom became owners of one fourth of the real estate owned by Esther Silverstein at her death. Conn. Gen. Stat. Sec. 52-404 (b) provides the statutory remedy when a claim arises that one owner is occupying a greater proportion than the amount of his interest. That statute CT Page 10792 reads as follows:
 (b) When two or more persons hold property as joint tenants, tenants in common or copartners, if one of them occupies, receives, uses, or takes benefit of the property in greater proportion than the amount of his interest in the property, any other party and his executors or administrators may bring an action for an accounting or for use and occupation against such person and recover such sum or value as in excess of his proportion.
Dorothy Mitchell, by the procedure followed in this case, was denied her due process rights of a jury trial, discovery procedures and other pre-trial motions which are not available in Probate Court proceedings. Whether or not Dorothy Mitchell owes the estate money for rent is a matter for the administrator to resolve by an action in the Superior Court.
Since this Court is without jurisdiction it cannot award damages for rent, and there is no award made for any rent. The plaintiff's claim that the only issue this court can consider in connection with rent is the amount he claims is due above and beyond the $18,770.00 awarded by the Probate Court is rejected. This is a trial de novo and the matter of rent comes to this Court in its entirety.
Subject matter jurisdiction can be raised at any time Conn. Practice Book Sec. 145; Sasso v. Aleshin, 197 Conn. 87
(1985).
Even if the Probate Court did have jurisdiction, this Court would not be able to award rent from Dorothy Mitchell The plaintiff introduced no credible evidence at the trial of this case as to the fair rental value of the property. Plaintiff's Exhibit 9 which he relies on is merely an arbitrary value made by the plaintiff. Its evidentiary value is minimal at best, and since Dorothy Mitchell had lived on the property for years without paying any rent, there is no historical record of a rental payment on the property. Of course, that is not to imply that a fair market rental cannot be determined, but to point out the weakness of the plaintiff's proof.
The plaintiff claims that this Court has to accept at the very least, the Probate Court's assessment of $18,770.00 and can only consider whether or not to award a larger amount. Having appealed this determination of the Probate Court, the plaintiff cannot now limit the defendant from CT Page 10793 contesting the entire rental award. This is a trial de novo and this Court will consider the issue of rent as to Dorothy Mitchell in its entirety.
CONCLUSION
The plaintiff is entitled to the payment of $8,800.00 for labor and services in connection with repair, upkeep and watchman type duties.
The plaintiff is entitled to an administrator's fee of $8,628.55. The total amount due to the plaintiff for work and fees is $17,428.55. The award of $18,770.00 to the estate of Esther Silverstein from Dorothy Mitchell is disallowed.
The remainder of the Decree Approving Final Account of Removed Administrator dated December 11, 1990 is affirmed and unchanged.
HON. LAWRENCE KLACZAK SUPERIOR COURT JUDGE