[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These consolidated cases are appeals from probate. The deceased, James Bunting, passed away on December 28, 1994. A will dated October 30, 1989, was admitted to probate. The defendant in both cases, Peter Bunting, was the executor of the estate under the terms of the will and was also a beneficiary. The plaintiffs are other beneficiaries under the will who claim that Peter improperly paid all of the residual assets of the estate for taxes pursuant to a tax clause in the will, that he improperly failed to include several bank accounts in the assets of the estate and that he failed to distribute shares of stock that had been the assets of a trust subject to distribution under the terms of the will.[1]
Some background is necessary for an understanding of the dispute. The decedent married Elizabeth, or "Lee", Lyon in 1938. Lee had two children from a prior marriage: Mansfield and Daniel Lyon. Lee and the decedent had two children: Elizabeth, or "Betsy" Bunting and Peter Bunting, the executor and defendant in these actions. Lee died on October 9, 1988; her estate was bequeathed to James, the decedent. Her estate included her interest in the Adaleen M. Winton Trust, which trust had been CT Page 2284 established by members of her family.
Most of the decedent's business career was devoted to Bunting Lyon, Inc., a private school directory. From time to time Mansfield and Daniel were involved in the business as well, Mansfield was at times a member of the Board of Directors as well. Peter spent his entire business career with Bunting Lyon. The decedent owned all the stock of the corporation until 1988, when he gave the stock and the building in which the business was located to Peter.
There was considerable testimony concerning the relationships between the decedent and the various plaintiffs over the course of the years. During the last years of Lee's life, when she apparently declined, there had been disagreement as to her treatment and care. At one point James was quite bitter toward Betsy, Mansfield and Daniel but the feelings were apparently quite ambivalent and, it is fair to say, softened into acceptance during the last years of the decedent's life.
The will, as indicated above, was executed in 1989. It is not complex. Article I of the will provides for the payment of debts and funeral expenses and directs "that any estate, succession, inheritance, death or transfer tax arising by reason of or in any way in connection with my death, be paid out of my estate as an expense of administration thereof, without apportionment or contribution." Article II provided that all personal items were to go to Peter. Article m provided that the residue of the estate was to be distributed in equal portions to Peter, Betsy, Mansfield and Daniel, per stirpes, and, perhaps somewhat redundantly, expressly directed that his interest in the Winton trust be distributed as provided for in Article III. The final article appointed Peter as executor, and his wife Karen as successor executrix, and conferred all powers allowed by statute at the time of administration.
In 1991 James moved into a retirement community and put bank accounts and some securities into joint accounts with Peter. In 1994, it will be recalled, James passed away.
Because of the various nontestamentary transfers which were required to be included in the compilation of the taxable estate, the total tax required to be paid as a result of the decedent's death was considerably greater than the total inventory of the estate. The federal estate tax, including interest, was CT Page 2285 approximately $370,000, and the state succession tax and interest was approximately $90,000. The amended account provided by Peter and approved by the Wallingford Probate Court showed an inventory of assets in the amount of approximately $400,000, and there were expenses other than taxes which the estate had to pay. The taxable estate, on the other hand, was approximately $1,600,000.
Relying on the "tax clause" of the will, Peter used all of the assets of the estate to pay taxes[2], leaving nothing to be distributed to putative beneficiaries. This accounting was approved by the Probate Court, and the plaintiffs have appealed.
An "appeal" from probate is perhaps a misnomer, as it is a denovo proceeding in which the Superior Court makes an independent determination of the issues raised in the appeal. Marshall v.Kleinman, 186 Conn. 67, 69 (1982). The reasons for appeal fulfill essentially the same function as a complaint in a traditional civil action; see Baskin's Appeal from Probate, 194 Conn. 635,642 (1984); and the parties have the opportunity to present any evidence which could have been offered in the probate court, whether or not it actually was offered. Id., at 641.
The dilemma presented in this case, that is, the seeming contradiction between the "tax clause" and the resulting effective disinheritance of some beneficiaries, is not new to our jurisprudence. Prior to 1945, resolution of the conflict depended at least in part on whether the tax in issue was an estate tax, payable in theory by the donor (or, in the usual case, by the estate of the donor), or a succession tax, payable in theory by the recipient. See, e.g., Ericson v. Childs, 124 Conn. 66 (1938). If the tax in question was an estate tax, then, absent an ambiguity, a testamentary clause directing the payment of taxes from the estate was effective even if it had the effect of disinheriting others. Ericson, supra. The result was criticized as one causing hardship and injustice, as "through ignorance, thoughtlessness or carelessness" the residuary legatees were frequently saddled with the entire tax, and other beneficiaries paid, in effect, no tax at all. New York Trust Co. v. Doubleday,144 Conn. 134, 140 (1956).
In 1945 the General Assembly passed the "proration tax", now codified as § 12-401 of the General Statutes.[3] A testamentary directive against prorating must be clear and unambiguous, as the practical effect of a directive against prorating is to increase the size of some bequests at the expense of others; see CT Page 2286Doubleday, supra, 141; or, as in this instance, effectively to disinherit all but one beneficiary. "[W]here . . . a will incorporates an expression as to the payment of taxes, the dictates of prudence require great caution in phrasing the language necessary for disclosing just what lies in the testator's mind, so that all doubt as to the extent or limitation of his command may be completely dispelled." Id.
"`The controlling consideration . . . in the construction of wills is the expressed intent of the testator. As the practical effect of making a legacy or devise free of tax is to increase the gift, and the shift the burden which the legacy or devise would ordinarily bear onto the shoulders of the residuary beneficiaries, the intent of the testator to make such a gift will not be drawn from vague or uncertain language. It must clearly appear.' (Citation omitted). `In seeking to determine this intent, we examine the language of the entire win in thelight of the circumstances which surrounded the testator at thetime he executed it, the real question being, not what did the testator mean to say, but what did he mean by what he did say.' (Citation omitted). In applying these general principles to determine the testator's intent as expressed in the will, the policy and purpose manifested by the statutory provisions quoted above must be kept in mind." McLaughlin v. Green, 136 Conn. 138,142 (1949) (emphasis added).
The McLaughlin court considered it significant that no mention was made in the will of any trusts which had had the effect of depleting the testamentary devises; that court also mentioned the advisability of including a reference to those transfers which one intends to bear no tax burden, if such is truly the intention of the testator. Id., at 145-46. See alsoCrump v. Crump, 20 Conn. Sup. 471(1957).
As the language of the "tax clauses" in Doubleday andMcLaughlin themselves provided for payment of all taxes from the estate, and in those cases proration pursuant to statute was held to be required, the result in the case at hand would seem to be quite straightforward were in not for the language in the tax clause in the decedent's will to the effect that taxes be paid from the estate "without apportionment or contribution." The quoted language, by itself, militates against statutory proration. When I examine the entire will in the surrounding circumstances, however, I find that the intent of the decedent, as expressed in the will, was not so clearly against proration as CT Page 2287 to negate Article III of the will. Although an intent not to apportion the tax burden was expressed, the intent to distribute property, especially and specifically that from the Winton trust, to the four children of Lee was also expressed quite clearly. At the time he executed the will, he had reconciled with Betsy, Mansfield and Daniel, and he certainly could have written a will specifically disinheriting them.[4] Because a significant portion of the assets of the estate devolved from property passing through the estate of the beneficiaries' common mother[5], the intent of the testator to ensure that that property be passed equally to her offspring is manifest. It is also not logical, as noted by the Connecticut cases on point, for a testator to provide specifically for individuals, only to have the bequest obliterated by an uneven tax burden. In light of the strong public policy expressed by the Connecticut Supreme Court and by § 12-401 of the General Statutes, I find that, in light of the entire will and the surrounding circumstances, the language used in the tax clause was not sufficient to overcome the favor accorded proration. The appeal, then, is sustained in that regard.
The remaining issues require less discussion. The plaintiffs seek an order that those items which had been transferred by the decedent into joint accounts with Peter be included in the probate estate. The perhaps oversimplified argument is that Peter was in a fiduciary relationship with James, and thus has the burden of establishing by clear and convincing evidence that the transactions ultimately resulting in his (Peter's) ownership of the property were accomplished in good faith. See, e.g., Alaimov. Royer, 188 Conn. 36, 41(1982).
I find against the plaintiffs on this issue. There is a statutory presumption that the establishment of a joint account is intended to be a gift to the survivor; the presumption may be overcome only by clear and convincing proof of fraud, undue influence or other such malfeasance. See § 36a-290(b) of the General Statutes. In a nutshell, I do not find any such evidence. Even if part of the purpose in establishing the joint accounts was to provide for ease in administering the estate, as urged by the plaintiffs, there still is little convincing evidence that anything other than a gift was intended. I further do not find, by clear and convincing evidence, that a fiduciary duty existed as to the joint accounts. See, e.g., Cooper v. Cavallaro,2 Conn. App. 622 (1984). The underlying facts of Cooper are similar to those in this case, and I find its reasoning persuasive. CT Page 2288
Finally, the plaintiffs argue that Peter should not have been allowed to transfer the stock of the Tompkins County Trust Company to himself, but rather should have distributed the shares of stock to the residual beneficiaries. The stock in issue was received by the estate from the Winton trust, which, it will be recalled, passed through Lee's estate to that of the decedent. During the course of the administering of the estate, Peter transferred the stock to himself, apparently in partial compensation for amounts that Peter had paid in his own money for taxes. The Probate Court did not approve the accounting as to the stock as it was first reported; an amended accounting which showed the dates of transfer and the value per share of the transfers was approved. The plaintiffs introduced evidence indicating that the other beneficiaries had specifically asked for the shares of stock at approximately the time that Peter was transferring the stock to himself.[6] The plaintiffs argue that the transfers should not have been made without the prior approval of the Probate Court. The plaintiffs recognize that the position as to the stock is largely academic unless their position as to the tax clause is adopted, as it has been.
The defendant argues that the transfer of shares of stock falls well within the powers granted in the Fiduciary Powers Act, specifically § 45a-234 of the General Statutes. The Probate Court ratified the transfer, in a sense, by approving the accounting after the details of the transactions were provided. Neither side provided specific statutory or case authority other than the Uniform Fiduciary Act.
I find that the most sensible disposition at this point is not to order return of the stock. In this decision I am balancing several considerations. First, there is no doubt that the executor has the authority to dispose of shares of stock, and there appears to be no absolute prohibition against transferring the items to himself, so long as there is no hint of advantageous self-dealing. The values set forth in the amended accounting were approved by the Probate Court, and the plaintiffs do not appear to claim that the prices so listed were incorrect. Although some evidence of the history of the value of the shares was introduced at trial, including the dividend history, I do not know if the value of the stock has greatly increased or decreased in the several months that have passed since trial[7]; thus, an inequitable result could occur one way or the other if the stock is ordered to be returned to the estate for distribution. The CT Page 2289 will itself directs that the testator's interest in the Winton trust be distributed according to the provisions of Article m; it does not specifically refer to the Tompkins County stock. Although the wishes of the other beneficiaries certainly should be considered by the executor, in the circumstances which then presented themselves when the request for the stock was made, the request was academic and I do not find that the transfers were made in any bad faith. It ought not be overlooked that the Probate Court approved of the transfer. On balance, I find that the factors militating against requiring that the shares be returned for distribution outweigh the factors in favor.[8]
The matter is, then, remanded to the Probate Court for proceedings not inconsistent with this decision. Distribution shall be made with the tax burden prorated in accordance with § 12-401 of the General Statutes, and the appeal is sustained as to that reason for appeal. As to the other reasons for appeal, the appeal is dismissed.
Beach, J.